No. 92.—JEFFERSON JOHNSON and WIFE, plaintiffs in error, *vs.* A. R. WRIGHT and ANOTHER, defendants.

[1.] In ejectment, the plaintiff insisted that a judgment which would bar him, was obtained by fraud—fraud consisting mainly in the procurement of the judgment in the absence of a guardian *ad litem*, for the defendant in the judgment, a minor. The parties agreed to submit the question of fraud to a Jury, as it would have been submitted had the case been in Equity. On the trial, the Court, at the instance of the defendant, made a judgment *nunc pro tunc*, appointing a certain person guardian *ad litem: Held*, that this was an error in the Court.

Ejectment, in Cass Superior Court. Decided by Judge TRIPPE, September Term, 1856.

The facts of this case are as follows:

An orphan, named Harriet Taff, was a drawer of a lot of

land in 1830. A *scire facias* was sued out in 1833, to declare said draw fraudulent; and a judgment was had condemning the draw, and the land was sold; under which sale the defendants claim.

Johnson, the plaintiff, having inter-married with Harriet Taff, brought this action of ejectment against the tenants of said land. It was agreed between the parties, that the Jury should try the case as if a bill in Equity had been filed, to set aside said judgment on the *scire facias,* as being obtained by fraud, and on the ground that. Harriet Taff, at the time of the rendition of such judgment, had no guardian or person appointed by the Court to defend said suit for her as required by the Act.

The cause was opened to the Jury, and the testimony of the plaintiffs had been submitted, when defendants moved the Court to take an order *nunc pro tunc,* appointing John W. Taff guardian *ad litem* for Harriet Taff—this order to be entered as for March Term, 1834. In support of this motion they submitted to the Court an entry on the bench docket, in the *scire facias* case, as follows: "John W. Taff appointed guardian *pendente lite.*" This entry John W. Hooper, former Judge of the Court, testified to be in his hand-writing; that he was then the Judge of the Superior Court of this Circuit, and made the entry; that a motion was made to appoint John W. Taff guardian, and it was granted. There was submitted, also, an entry on the original *scire facias,* admitted to be in the hand-writing of the then Clerk of the Court. On this evidence, the Judge granted the motion to enter said order *nunc pro tunc.* To which decision plaintiffs excepted, on the grounds—

1st. That more than twenty years have elapsed since the alleged granting of the order now entered.

2d. That the testimony is not sufficient to warrant the order.

3d. That by the agreement between the parties, the question was submitted to the Jury, whether such appointment was actually made or not.

AKIN; HULL, for plaintiffs in error.

UNDERWOOD, for defendants.

*By the Court.*—BENNING, J. delivering the opinion.

The question is, whether it was right in the Court, under the circumstances of this case, to interpose and render the judgment *nunc pro tunc?*

It seems that there was a question in the case, whether the judgment in *sci. fa.* had been obtained by fraud or not; and that the main question involved in this question was, whether a guardian or other person, *ad litem,* had ever been appointed or not in the *sci. fa.?*

And it seems that the parties agreed that the question of fraud or no fraud in the judgment, should be submitted to the Jury, just as it would have been if the parties resisting the judgment had filed a bill alleging the fraud, and that bill had been before the Jury.

Whether a judgment was procured by fraud, is a proper question for a Court of Equity. And such a question, if presented to a Court of Equity, would be presented by a bill, and would be a question for a Jury.

Johnson and wife, then, had the right to present the question, whether the judgment in the *scire facias* was obtained by fraud or not to a Court of Equity; and by consequence, the right to have that question tried by a Jury. This was their right.

They agreed with the tenants in possession, that this question should not be presented to a Court of Equity, but should, in the course of the trial of the ejectment—a trial to which the question related, be presented to the Jury trying the ejectment, and should be tried by that Jury. Was this an illegal agreement, or an agreement not binding on the parties to it?

What law did it violate? We know of none.

It is every day's practice for a defendant to confess a judgment, reserving the right of appeal. It is, perhaps, quite as common for the parties to a case to agree that the case be put on the appeal, without the intervention of any verdict of a Petit Jury.

The substance of such agreements is, that the case shall not be tried by a Petit Jury at all, but shall be tried by a Special Jury on appeal, as if it had once been tried by a Petit Jury.

And what, in substance, is the other agreement? It is, that a question shall be tried by a Special Jury, in a proceeding at Law, rather than by a special Jury in a proceeding in Equity. This is all.

We cannot say, then, that we think that the agreement was illegal.

If legal, was it not binding on the parties to it? Johnson and wife had acted on the agreement. Instead of filing their bill, they had gone to trial relying on the stipulation that they might have on the trial all that they could have by a bill.

It is a general rule, that agreements made by parties in the progress of a case which have been acted on by either party, cannot be repudiated by the other; at least, not unless, on setting aside the agreements, things resume their position in *statu quo.*

We know of nothing to take the present agreement out of this general rule.

We think, therefore, that if the Court below had seen fit to let the tenants in the ejectment abandon the agreement with the lessors, the Court should at least have continued the case so as to give the lessors an opportunity to file a bill to set aside the judgment. The Court ought not, we think, to have gone further—to have gone the length of itself, conclusively deciding the very question the presentation of which would be the sole object of the bill. This the Court did when it made the judgment *nunc pro tunc.*

In this judgment, therefore, the Court, as we think, erred.