53   401
130  198

THE SOUTHWESTERN RAILROAD COMPANY, plaintiff in error, *vs.* THE ATLANTIC AND GULF RAILROAD COMPANY, defendant in error.

1. The mere fact that a railroad company, located within this state, sent iron to which another company claimed title, beyond the state, without any fraudulent practices or concealment on the part of the former, debarring or deterring the other from its action, does not disable such first mentioned company from asserting a title by prescription to the iron when sued for it in an action of trover by the other.

2. If the right of action on the part of the plaintiff existed all the time, and there was no disability preventing its assertion, produced by the fraudulent acts of the defendant, or resulting from any cause recognized by law, then the right of reclamation as meant by the Code, continued without interruption, and the true intent and meaning of the provisions of the statute on the subject of title by prescription to personal property, are preserved by allowing defendant to assert such a right.

3. A contrary construction would not only give the plaintiff in such a case a perpetual right of action, of which he could avail himself at pleasure, but if the property were to be consumed or placed beyond the power of the defendant so that he could not return it within the state, whatever might be his good faith, he could never claim repose even against a doubtful right.

4. Whilst it is competent for the officers of a corporation to state, as witnesses, that the company never had knowledge or notice of a certain fact, such testimony is not conclusive upon that point, and if the other party wishes to show that the statement is a mere conclusion of the witness, he can do so by cross-examination.

5. When counsel on both sides have entered into a written agreement as to certain facts, it is not competent on the trial for the party who

Southwestern Railroad Company *vs.* Atlantic, etc., Company.

introduces such statement to the jury, to prove a fact contrary to what it is stated to be in the agreement.    To avail himself of this right proper notice should be given.

Railroads.    Trover.    Prescription.    Evidence. , Principal and agent.    Corporations.    Evidence.    *Practice in the Superior Court.*    Before HENRY WILLIAMS, Esq., Judge *pro hac vice.*    Bibb Superior Court.    October Term, 1873.

This was an action of trover for the recovery of one hundred and fourteen and one-fourth tons of railroad iron, known as the T rail, brought by the Atlantic and Gulf Railroad Company *vs.* the Southwestern Railroad Company.

The facts, were as follows : In 1862, one J. G. Minor, as the agent of the Confederate States Government, seized a large lot of T railroad iron bars belonging to the plaintiff, and at the time lying in piles on or near its track.    Minor did not value or pay for this iron, but very soon after its seizure let Isaac Scott have the whole, on his agreement to deliver a like quantity of old railroad iron, in bars, in lieu of it. Isaac Scott sold to the defendant one hundred and fourteen and one-fourth tons of this iron for a like quantity of old railroad iron bars, and the additional sum of $32.00 per ton, to be paid in money.    The defendant delivered its old iron rails to the same amount, and paid the price agreed on as the difference, in Confederate treasury notes, to Isaac Scott, and received the new iron rails in the latter part of the year 1862, say in December of that year.    The iron was delivered to the defendant, in its yard in Macon, on the cars of the plaintiff, where it remained until some time in August, •1864, when the defendant loaned some sixty to eighty tons of the iron to the Montgomery and West Point Railroad Company, in Alabama, to lay down on its track, to be returned when called for ; it was then carried into Alabama for that purpose.    It has never been returned or paid for.    The balance of the iron remained in the yard until it was seized by the Federal army, some time in 1865, to repair the State Road.

The president of plaintiff, Mr. Screven, was absent in the

army when this iron was seized and carried off; in 1866 he sent out the treasurer to look up the iron, and on inquiry, he found that a portion had been received by the defendant. Mr. Lovell, as the attorney of the plaintiff, called on Mr. Powers, superintendent of the defendant, for information as to this iron, in 1866, when he was shown the books of the road in relation to the iron; he was then informed by Mr. Powers when the iron was received, how it was obtained, who from, and as to all facts he desired. In that conversation nothing was said as to the removal of the iron, or any part of it, out of the state, but information given as if the iron was still in possession and use of defendant.

There was no consent to the seizure by the plaintiff. Suit was not brought until 1868.

The defendant pleaded title by prescription.

In the course of the trial, the following paper was introduced:

"THE ATLANTIC AND GULF RAILROAD COMPANY *vs.* THE SOUTHWESTERN RAILROAD COMPANY—*Trover*.

"It is admitted that the Southwestern Railroad Company is in possession of one hundred and fourteen and one-fourth tons of the iron sued for in this action; that it was illegally seized by the Confederate government in 1862, without the consent of the plaintiff, and that plaintiff has not been paid for the same by any one, and that defendant purchased it from Isaac Scott in November, 1862, for value, and it has been in the actual possession of the same from 10th December, 1862, to the present time, the defendant all the time using and claiming the same as its own property; all questions as to any knowledge by the defendant at the time of its purchase of the plaintiff's title to the property being left open to other proof.      R. F. LYON,

"*Defendant's Attorney.*

"JOHN M. B. LOVELL,
"*Attorney for Plaintiff.*"

The jury found for the plaintiff. The defendant moved for a new trial, upon the following grounds, to-wit:

1st. Because the Court erred in refusing to charge, without qualification, as follows: "If the defendant purchased this iron for its full value, from Isaac Scott, on the 10th December, 1862, then got possession of the same, all without any fraud or concealment of the same, and has, from that time to the commencement of this suit, continued in the actual possession thereof, all the time claiming and using the same as its own property, then the defendant's title to this iron by prescription is complete, and the plaintiff cannot recover." And in charging said request with the following qualification: "If, after the defendant purchased and acquired the possession of this iron, any time before the expiration of four years from the commencement of such possession, it was removed by any one out of the state of Georgia, then the defendant's possession could not ripen into a title by prescription as to such of the iron as was so removed out of the state."

2d. Because the court erred in charging the jury as follows: "If you find as to this property, or any part of it, concealment, removal from the state, or that it was so placed as not to be subject to reclamation, or fraud in the original taking of the property by the defendant, or fraud, deterring the plaintiff from its action at any time after the accruing of plaintiff's right of action, title by prescription is not complete. In the last case the right of action accrues from the time of the discovery of the fraud."

3d. Because the court erred in permitting John Screven, president of the Atlantic and Gulf Railroad Company, to testify as follows: "In 1866 the first knowledge was brought to the company of the disposition of said iron."

4th. Because the court erred in admitting any evidence, over the objections of defendant, as to the seizure of the iron, its use, what was done with it, etc., except its value, and the knowledge by the defendant, at or before its purchase, of the illegal seizure, or of the title of the plaintiff to it, after the introduction of the written agreement between counsel, which

Southwestern Railroad Company *vs.* Atlantic, etc., Company.

was put in evidence immediately after the close of the examination of the president, John Screven.

The motion was overruled and defendant excepted.

LYON & JACKSON ; JACKSON, LAWTON & BASINGER, for plaintiff in error.

HARTRIDGE & CHISHOLM ; LOVELL & FALLIGANT, for defendant.

TRIPPE, Judge.

1, 2, 3. The provisions of the Code on the subject of title by prescription to personal property, applicable to this case, are as follows: Adverse possession of personal property within this state for four years shall give a title by prescription. No prescription arises if the property be concealed, or removed out of the state, or otherwise is not subject to reclamation. A prescription does not run in cases of fraud debarring or deterring the other party from his action, until the fraud is discovered : See Code, sections 2685 and 2688. Before the adoption of the Code, and the substitution of these provisions for those in the statute of limitation, it was prescribed by that statute that all suits for the recovery of personal property or for damages for the conversion of it, shall be brought within four years after the right of action accrues and not after. The exceptions—akin to those given in the law of prescription—were, that where any person against whom a right to sue existed, should remove from this state, the time should cease to be computed in his favor from the time of such removal and so continue until he should return and fix his residence in this state. Also, where the property should be carried away and secreted so that the owner did not know who was in possession of it, on where it was, or against whom to bring his suit, the statute ceased running until the property was discovered, or who was in possession of it: Acts of 1855–6, page 233. There was also a provision on the subject of fraud substantially like that in the present law of prescription. The de-

fendant in this case is a railroad company, located in this state, was liable to be sued, and could have been sued at any time after it received the iron now claimed; and the question is, did it lose all right to assert title to the iron by prescription, because it was sent, or loaned, or sold, so that it was taken out of the state? The court charged, that as to the portion that was taken to Alabama, no prescriptive title could be asserted, and a verdict was found for that much of the iron. We think there was error in the charge. Under the statute of limitation, we are not aware that it was ever held, that, because property for which a party was sued had been carried beyond the state, whilst the defendant resided here all the time, and there had been no secreting or concealment of it, nor other fraud, so that the claimant did not know against whom to bring his suit, the defendant thereby lost all benefit of the statute. Did the change of the law from one of limitation to one of prescription, radically revolutionize such an important feature as this? Before the adoption of the Code, it will not be questioned, that unless fraud of some sort were shown which prevented plaintiff from suing, the defendant could have protected itself under the statute of limitation, although the iron had been sold and carried out of the State. The words of the Code are: "No prescription arises if the property be concealed, or removed out of the state, or otherwise is not subject to reclamation." Do not these last words furnish a key to aid in the construction of the whole provision? Why should the statute cease to operate if reclamation be all the time at the command of the claimant? A party may have reclamation without obtaining the specific article or property. Webster defines reclamation to mean, "Recovery. 2. Demand; challenge of something to be restored; claim made." If reclamation means a regaining of the property itself, then if the property be perishable and die, or is consumed, a defendant in such a case could never claim the benefit of the statute. So, if the property was to be destroyed, or placed beyond the power of the defendant to return it within the state, there would be a perpetual right of action against him,

and whatever might be his good faith he could never have repose even against a doubtful claim. 'We think the true construction of the law on this matter is, that if the right of action on the part of the plaintiff exist all the time, and there be no disability preventing its assertion produced by the fraudulent acts of the defendant or resulting from any cause recognized by law, then the right of reclamation as meant by the Code continued without interruption, and the true intent and meaning of the provisions of the statute on the subject of title by prescription to personal property, are preserved by allowing the defendant in such a case to assert such a right.

4. Objection was made to the statement made by officers of plaintiff's company, that the company never had knowledge or notice of certain facts. We think this was competent evidence. Really, it is about the only way they could prove such a fact. Of course it is not conclusive, and if the other party claim that this statement is merely a conclusion or opinion of the witness, he can show it to be so by cross-examination or other evidence.

5. As to the question involved in the last point, it is sufficient to say that it need not arise on another trial, and that the rule established in *Wallace vs. Matthews*, 39 *Georgia*, 617, and in *Hargroves vs. Redd*, 43 *Georgia*, 142, will be a guide, as they set forth the correct principle to govern in such cases.

Judgment reversed.