Wilson *vs.* The Bank of Louisiana *et al.*

EDWARD H. WILSON, plaintiff in error, *vs.* THE BANK OF LOUISIANA *et al.*, defendants in error.

1. This court will not interfere with the practice in the Augusta circuit of trying the issue on the traverse of the answer of the garnishee before the suit against the principal debtor is tried. It is enough if no judgment be entered against the garnishee until judgment is rendered against the principal debtor.

2. Admissions agreed upon by counsel as to facts in the case, will not be allowed to be withdrawn after the position of parties has been substantially changed by the death of one or more parties or witnesses.

3. Counsel who agree upon such statement of facts are not parties to the record so as to render one of them incompetent as a witness to testify about the circumstances under which the facts were agreed upon because the other counsel is dead.

4. Government is not subject to garnishment.

5. Nor is an officer of its revenue so subject when funds sought to be reached belong to government or are claimed by it and to which it has the possession by such officer, the said officer having no connection therewith as a private person, but having received it in his official capacity from his superiors as public money and holding it as such when served with the summons, and continuing so to hold it until transferring it by order of government to another similar officer.

6. It makes no difference in applying this rule, that the government was not *de jure*, but *de facto* merely, if when the garnishment was issued and served, and when thereafter the officer parted with the fund, the state organization, whose functionaries issued and served the garnishment was in all its departments, legislative, executive and judicial, in full accord and co-operation with such *de facto* government, recognizing and obeying its constitution as supreme law, and aiding with armed force to maintain its authority.

7. The government of the Confederate States, being recognized, obeyed and upheld by the people and government of Georgia, was able to protect its revenue officers in 1863 from process of garnishment issued from the courts of Georgia. Those courts, as then constituted, were protected by the military power of the Confederacy, and their judges were sworn to support its constitution; and whilst both courts and judges existed *de jure*, they were then *de facto*, under a temporary political system then dominant, and that dominant government, its deposits and revenues, were beyond the reach of any process that those state courts and judges had power to issue and enforce.

8. To deny to the plaintiff now any fruits from a garnishment so issued against a garnishee so situated—constrained in the line of his duty as an officer, before the downfall of the Confederacy, to surrender the fund to another officer—is not to hold that title could be divested by the Confederate government legally from the Bank of Louisiana, but it is to hold that

this plaintiff, having voluntarily come within the Confederate lines and used the process of a state court in co-operation with that government, acquired no right, by such remedy instituted at that time in such a court, to the fund in the hands of the garnishee as an officer of the Confederate government.   By using the process of the court so situated, he is estopped from denying the authority and dominion of the government; then *de facto* dom-·inant over court, garnishee and people.

Practice in the Superior Court.   Garnishment.   Admissions.   Witness.   State.   Confederate States.   Estoppel.   Before Judge GIBSON.   Richmond Superior Court.   October Term, 1874.

Reported in the opinion.

W. W. MONTGOMERY; C. N. WEST, for plaintiff in error.

W. T. GOULD; FRANK H. MILLER, for defendants.

JACKSON, Judge.

This suit was brought against the Bank of Louisiana by service of garnishment upon Thomas S. Metcalf, in the year 1863.   Metcalf answered that he owed the bank nothing, and had no effects of the bank in his hands at the time of the ser-vice.   This answer was traversed; he died pending suit, and his executor was made a party.   The jury found, under the charge of the court, for Metcalf; a motion for a new trial was made on various grounds alleged in the record, overruled on all, and the case is before us on assignment of error thereon·

1. The first ground is as to matter of practice in the Augusta circuit.   There they try the issue on the garnishment before the main suit is tried, to ascertain whether the court has jurisdiction in a case like this.   No judgment against the bank could stand unless the court got jurisdiction by the garnishment, and we will not control the court below in following the practice of the circuit.   It seems reasonable.   As we understand it, action is suspended, or the judgment against the garnishee remains passive, if obtained, till a verdict and judgment are rendered against the principal; if no judgment is

had against the garnishee, the case goes out, there being no jurisdiction, in such a case as this, then in the court.

2. The second assignment of error is that the court ought not to have admitted the agreement of counsel. Witnesses have died since the agreement was made, and the party desiring to do so could not withdraw it under these circumstances. The decisions of this court are in harmony with this view, and it is right in principle and just to all: 39 *Georgia,* 617; 43 *Ibid.,* 142; 49 *Ibid.,* 303.

3. The third ground is, that Judge GOULD was permitted to testify as to the circumstances under which the above stated agreement was made after the death of Judge Starnes, the counsel for Wilson. We are not aware of any rule of law which would exclude his testimony. He is no party, and has no interest, and was always a competent witness whether Judge Starnes were living or dead.

4, 5. But these are merely incidental and preliminary points. The great question in the case is, whether, under the facts, which in the main are undisputed, Metcalf's estate is liable for the debt Wilson claims that the Bank of Louisiana owes him. Those facts are, that just before the fall of New Orleans into the Federal hands, under General Butler, that bank removed a large amount of coin to Columbus, Georgia; that the Confederate government, then dominant over Georgia, seized it and appropriated it to its own use; that thereafter it sent the coin to Augusta, Georgia, Columbus being threatened by the Federal forces, and placed it in the hands of Metcalf, drawing on it *ad libitum* and using it as its own; that subsequently, Augusta being threatened in its turn, it was transported by order of the Confederate authorities to Charlotte, North Carolina, to another depository there, and then all trace of it was lost. Was Metcalf's answer true or false? Did he owe the bank anything, or have any of their effects in his hands, so as to make him liable to pay the debt the bank owed Wilson, under the law applicable to these facts? No government is liable to the process of garnishment. Public convenience requires that it should not be so

Wilson *vs.* The Bank of Louisiana *et al.*

subject. Its revenues must be collected free from interruption. Indeed, it cannot be sued, except at its own will. But its revenues must, from the very nature of government, be in the hands of private persons. It can act only through agents, and to preserve its revenue, the agents, who are the custodians of it, must also be free from the process of any court touching the public funds. If Metcalf, in 1863, had been the agent of the United States government, or if process of garnishment were sued out now against an agent of that government, it cannot be doubted but that it would be dismissed; or if the process were served upon such agent as an individual, and he answered that he owed nothing, and the facts showed that what he owed or held was government property or money, or claimed by it as such, the traverse would undoubtedly be found in his favor.

6, 7. Now, the precise point made here, is this : The government of the Confederate States was a usurping government, therefore the rule does not apply. But it must be borne in mind that Georgia was, in 1863, part and parcel of that government; she was aiding in the usurpation, if it was a usurpation ; the Confederate authorities were then paramount over her as to this revenue or coin ; that was a government *de facto*, if not *de jure*, to which all within the limits of Georgia were forced to submit; the very court to which this process was returned, and from which it issued, was, in 1863, a court subordinate to the Confederate government; its officers, from the judge to the clerk and sheriff, were required to take an oath to support that government; and can it be said, with any show of reason, by one who sought the courts of Georgia and invoked her process in 1863, to secure his debt, that in 1875 she was supporting an usurpation, and that a citizen of hers in the employment of the government she then upheld will not now be protected by her, if he acted in obedience to her behests and in conformity to her example, as an officer and agent of the Confederate government in good faith ; and will she, *can she,* unless, indeed, the *vis major* be applied to her courts to coerce them, deny to her

citizen the application of this rule of universal law, that if he held these funds as agent of the government Georgia recognized, he cannot, by Georgia courts, be made liable personally therefor, unless, indeed, he acted fraudulently; and there is no evidence of fraud in this record, and used government as a cloak for crime?

Mr. Metcalf must needs have obeyed the mandate of the Confederacy. He could not have invoked the courts of Georgia to aid him in resisting the orders of that government. The military power of the Confederacy was upon her, and the civil magistrates of Georgia were all *in vinculis* by the bond of a solemn oath; and if he had appealed to either to help him retain this fund, he would have been derided, possibly maltreated, perhaps executed for treason, for his pains. The law is the highest reason—akin to Him who is the author of all real law, and the fountain of all pure reason; it is his offspring; and to hold a man liable out of his private estate under the facts admitted here, would be to sin against the law, against justice and equity, and the pure fountain from which they all flow.

8. Nor does this view conflict, in our judgment, with the decisions of the supreme court of the United States. We deny to the plaintiff the fruits of a garnishment, a process which grows from a rebellious soil, because he invoked the aid of a court then in rebellion against the United States and sworn to obey the mandates of a government waging war upon the United States. It is not necessary for us to hold that the title to this coin was divested from the Bank of Louisiana lawfully by the Confederate government. It is enough to say that this plaintiff cannot institute a suit in a court antagonistic to the United States, before a judge sworn to uphold a government at war, *flagrante bello*, with the United States, and thereby acquire a right to this coin, or use this remedy to secure such a right. When he sues in a court he must recognize it as legal at the time he commences his action, and all the authorities under which the court is held; and to which it has sworn allegiance, through all its officers, as ·legal and

valid *pro hac vice* at least. As to one who seeks its forum, the court must of necessity be *de jure;* and it is not for a suppliant at its bar to charge it, and the government then protecting it, with treason.

Judgment affirmed.