## COMMERCIAL UNION ASSURANCE COMPANY LIMITED, OF LONDON, *v.* CHATTAHOOCHEE LUMBER CO.

1. An attorney employed in two different suits against different parties, but involving the same issues, and the interest of his clients being of the same character in each, may stipulate that the trial of one shall determine the issues in the other. Under the facts of this case, and in view of the agreement made, which specified that one suit should abide the result of the other, and that the final termination of one should be the final termination of the other, there was no error in holding, after a final judgment in the first case finding in favor of the plaintiff for the total amount of the insurance policy there involved (allowing a small admitted credit for a premium returned), upon the trial of the suit on the policy involved in the second case (which was in all respects like the other policy save as to its amount), that a verdict and judgment should be entered for the full amount thereof, less the small deduction admitted to be proper on account of a return premium.

2. Where, after judgment against the first company for the full amount of its policy (less a small credit for a returned premium), on the trial of the suit based on the second policy it was sought by motion to have the agreement to be so construed or opened as not to prevent proof that some of the property insured was not destroyed, and the question of knowledge of the facts on the part of the defendants or their agents or attorneys, or opportunity for knowledge thereof, prior to the trial of the first case, was involved, a letter from the insured to the person who was agent of both companies, though addressed to him as agent only

of the company against whom the judgment had been obtained, suggesting that adjusters be sent to the scene of the fire, and his reply stating that "the policies" had been cancelled before the fire and that "you had no insurance with our office at the time of the fire," and also a letter from the attorneys representing the defendant in the first trial, who were also the attorneys for the defendant in the second trial, denying the liability on the first policy but suggesting certain irregularities in the proofs of loss, though not admitting them to be valid, were admissible in evidence along with the proofs of loss made to each company under its policy, which were similar in character.

3. Nor, under the facts disclosed, was there error in holding that the defendant in the second case could not reduce the amount of its liability by showing that some of the property insured had not been destroyed, the suit in each case claiming the full amount of the policy, and the same defenses being applicable to both cases.

4. Where after the evidence closed the attorney for the defendant stated that he desired to move for a direction of a verdict, and thereupon the attorney for the plaintiff stated that he also desired to move for the direction of a verdict, and, instead of hearing the motions separately and giving to each movant the right to open and conclude the argument on his own motion, the court heard both together and allowed counsel for the plaintiff to open and conclude, even if this be erroneous, it will not require a reversal where there was no error in the direction given.

Argued July 2, 1907.—Decided February 7, 1908.

Action upon insurance policy. Before Judge Spence. Decatur superior court. November 13, 1906.

*King, Spalding & Little,* for plaintiff in error.

*Donalson & Donalson* and *Adams & Adams,* contra.

LUMPKIN, J. The Chattahoochee Lumber Company sued the Commercial Union Assurance Company Limited, of London, on a fire-insurance policy. In addition to this policy there was another issued by the Home Insurance Company of New York, covering the same property, on which suit was likewise brought. The suit against the Home Insurance Company was first tried. It was agreed in writing in open court that the present case should "abide the result" of the other, and that, "whatever may be the final result in the termination of the latter suit, the same result is, agreed to be the final termination of the suit against the Commercial Union Assurance Company." Judgment was recovered against the Home Insurance Company for the full amount of its policy, crediting the defendant with a premium which had been returned to the plaintiff; the case was brought to the Supreme Court, and the judgment affirmed (126 *Ga.* 334 (55 S. E. 11), and this was: "the final termination" of that suit. When the case against the

Commercial Union Assurance Company came on for trial, it contended that it was only bound by the former judgment to the extent of determining that there was a liability on its policy, and that an effort which it had made to cancel the policy had not proved effectual. It conceded a liability, but asserted that the insurance was not in gross upon the entire property, but to the aggregate extent of $5,000 pro rata upon various items of property separately, and that some of the items were not destroyed by fire. Therefore it claimed that it was not liable for the full amount of its policy, but only for a pro rata amount determined by the ratio of the value of the items which were destroyed to the value of the whole property insured. It also filed a motion, alleging, that when its attorneys made the agreement to abide the result in the other case, they were under the belief that there was no dispute as to the loss being total, and that the only issue was the question whether the policies had been cancelled before the fire; that since the decision of the Supreme Court the attorneys had learned that some of the items were not destroyed by fire; and it was asked that the agreement should not be held to prevent the defendant from showing what was not destroyed and having the amount of the judgment determined accordingly. This was resisted. The plaintiff had sued for the full amount of the policy. Its counsel still contend that it was entitled to recover in full, and that the prorating clause had relation to other insurance, or at least was ambiguous, and that this was a matter necessarily controlled by the former judgment on a similar policy. Evidence was introduced. Both sides moved the direction of a verdict. The court directed one for the plaintiff for the full amount of the policy, less a credit apparently for a premium which the plaintiff conceded had been returned. The defendant excepted.

1. The rule is generally recognized that an attorney at law has implied authority to do anything necessarily incident to the discharge of the purposes for which he was retained. He may make any agreement or stipulation which appears, in the progress of the case, to be necessary or expedient for the advancement of his client's interest, except where it is held that he can not compromise his client's case or surrender his substantial rights. "Thus an attorney employed in several different suits by or against different parties, but all involving the same issues, and the interest of

13

his client being of the same character in all, may stipulate that the trial of one shall determine the issues in all the others." 3 Am. & Eng. Enc. Law (2d ed.) 354; Ohlquest *v.* Farwell & Co., 71 Iowa, 231 (32 N. W. 277) Scarritt Furniture Co. *v.* Moser & Co., 48 Mo. App. 543. The Civil Code, §4417, declares that attorneys "have authority to bind their clients in any action or proceeding, by any agreement in relation to the cause, made in writing." It is not denied that the agreement which was made by the attorneys was binding on their clients; but it is contended that it did not cover or preclude the defense now sought to be set up, or, if it did, that it was made under a mistaken belief by the attorneys for the defendant that the entire property insured was totally destroyed, when in fact some of it was not burned. There were two policies of insurance, issued by different companies. Each of them described the property insured as consisting of different items; and were identical in all respects except as to the amount of each, one being for $20,000, and the other for $5,000. The policy now under consideration provided that it was understood that it "covers pro rata on each of the above items aggregating $5,000." The policy issued by the other company contained a like clause. The agreement made in open court, before the first case was tried, provided that the present suit should "abide the result of" that about to be tried, and that whatever might be "the final termination" of the suit first tried "the same result" should be "the final termination" of the other suit. The final termination of the first suit was a judgment for the full amount of the policy, less a small reduction on account of a certain premium admitted to have been returned to the insured when an effort was made to cancel both policies. How shall the same result be made the final termination of this case, except by a judgment for the full amount of the policy, less the deduction admitted to be proper on account of the amount of premium returned by the defendant in the same effort to make a cancellation? To hold that the present defendant was only concluded as to the question of whether there was a cancellation or whether the policy was in force, leaving open all other defenses which might have been made in both cases, could hardly be called "a final termination" of this suit. Under such a view, the adjudication on the other case would not produce a final result in this, but would only act as one step

in the litigation. If the judgment in the former case was conclusive only on the issue of cancellation or no cancellation, why might not this defendant also have pleaded a violation of some of the other terms of the policy which would have avoided it, such as that the insured concealed or misrepresented some material fact; or that the interest of the assured had not been truly stated; or that the mill had been operated after ten o'clock at night; or that benzine, gasoline, or other prohibited articles had been allowed on the premises; or that some of the buildings had been vacant for more than ten days? None of these defenses were in fact set up; but if this defendant was only bound as to the defense of cancellation of the policy, why might not any or all of the possible defenses suggested, or others, have been made grounds of defense, in spite of the final adjudication in the other case? If so, the termination of that case might have been, not the final result or termination of this case, but practically only the beginning of the litigation. We do not think that the agreement is susceptible of such a construction. It may be said that the defendant conceded that the question of liability was conclusively determined by the judgment in the other case. But why? None of the defenses referred to were actually set up or litigated in that case. The written motion made at the time of the trial of this case, that the defendant should be allowed to prove that its liability was less than the amount of the whole policy, stated that the only question made in the former case was as to cancellation. It may be that none of the defenses mentioned existed; but the question is, not whether they might have been established, but how far the present defendant was precluded from setting up those or other defenses. Certainly the Home Insurance Company could not say it was bound alone as to the defense actually pleaded. It was concluded as to defenses which were set up, or might have been set up. If it was so concluded, was not the Commercial Union Assurance Company equally concluded as to defenses common to the two cases, and which either were or could have been set up in the former? If this be true, the defense that, under a proper construction of the policy then before the court, the company was not liable for the full amount of insurance, but only for a proportionate part according to the value of certain items, could have been set up in that suit as well as in this. If the Home Insurance Company, has been

adjudged to be liable for the total amount of insurance named in its policy, and the Commercial Union Assurance Company should now be adjudged liable, not for the whole insurance, but for a pro rata part, it is manifest that the result in one case and its final termination would not be the same as that in the other, as agreed. The results would only be the same in part, and different in part. The general rule is, that where two similar cases involving the same questions are pending, and it is agreed that one shall be tried and the other shall abide the result thereof, such an agreement is binding, and the final result in the one case will be made that in the other. *Jarrett* v. *McLaughlin,* 123 *Ga.* 256 (51 S. E. 329).

But it is said that if the agreement operated to conclude the defense as to the amount of the loss sued for, it was made under a mistake, and should have been opened so as to admit proof that the loss was not total as to all the property covered by the policy, but that some of the items were not destroyed. In *Jarrett* v. *McLaughlin,* supra, it was said that "There was no merit in the motion to set aside the agreement of the parties, inasmuch as the plaintiff in error voluntarily chose to consent that his case should abide the result of that brought to trial and final judgment, whatever that result might be or however erroneously or through whatever misfortune it might be reached; and therefore he stands in no better position than does the losing party to that case, as to whom the judgment therein is certainly final." That case was properly decided on its facts, and states the general rule. Mere errors, or failure to make all possible defenses or introduce all possible evidence on the trial of one case, would furnish no reason for allowing them to be urged on the trial of the other. But we do not wish to be understood as laying down an inflexible and invariable rule that all agreements between counsel for the advancement of the trial of a case, such as that certain facts may be treated as true without proof, stand exactly like contracts of bargain and sale, or that they can never be opened for fraud or mistake, upon proper application, notice and showing. In 1 Greenleaf on Evidence (16th ed.), §206, it is said: "It is only necessary here to add, that where judicial admissions have been made improvidently, and by mistake, the court will, in its discretion, relieve the party from the consequences of his error, by ordering a

repleader, or by discharging the case stated, or the rule, or agree-ment, if made in court. Agreements made out of court, between attorneys, concerning the course of proceedings in court, are equally under its control, in effect, by means of its coercive power over the attorney in all matters relating to professional character and conduct. But, in all these admissions, unless a clear case of mistake is made out, entitling the party to relief, he is held to the admission; which the court will proceed to act upon, not as truth in the abstract, but as a formula for the solution of the particular problem before it, namely, the case in judgment, without injury to the general administration of justice." In Alexander v. Muirhead, 2 Des. (S. C.) 162, suits were brought on several policies of insurance. Upon the understanding that all of them involved the same question, an agreement was made that one case should decide the others. A verdict was rendered for the plaintiff. Judgments were also entered on the other policies. A new trial was granted in the first case, but the plaintiffs refused to allow the judgments to be set aside in the others. It was discovered that in fact the cases were different, and that the evidence applicable to one was not applicable to the others. On a bill in equity, the stipulation was so far opened as to allow the defendants in the cases not tried to have the benefit of a trial before a jury on a question of misrepresentation, which developed on the trial to be peculiar to them and not to be involved in the case tried. In Georgia an agreement like that involved in the Alexander case would have been considered as effective in the cases not tried, only on final judgment in the one tried. *Peoples Bank. v. Merchants and Mechanics Bank,* 116 *Ga.* 279 (42 S. E. 490). See also, on the general subject, the discussion in the opinion of Green, C. J., and the dissenting opinion of Nevius, J., in Howe v. Lawrence, 2 Zab. (22 N. J. L.) 99; Harvey v. Thorpe, 28 Ala. 250 (65 Am. Dec. 344).

In *Johnson* v. *Wright,* 19 *Ga.* 512, it was declared to be a general rule that agreements made by parties in the progress of a case, which had been acted on by either party, can not be repudiated by the other; at least not unless, on setting aside the agreements, things resume their position in statu quo. See *Morris* v. *Milner,* 20 *Ga.* 563; *Varner* v. *Goldsby,* 22 *Ga.* 302. In *Wallace* v. *Matthews,* 39 *Ga.* 617 (99 Am. D. 473), it was held that where a

party to a suit made an admission for the purpose of saving the other party the expense and trouble of getting up the evidence on certain points, and afterwards discovered that he had by inadvertence or mistake admitted facts which were not true, or which it was proper for him to controvert, he might, by notice to the other party, withdraw the admission, and put his adversary on proof of the facts, provided there was sufficient time after the withdrawal of the admission for the preparation of the case, and the other party had not been injured thereby, as for instance by the death of a witness or other like cause. In *State* v. *Southwestern Railroad,* 66 *Ga.* 403, a mistake in an agreement to settle a suit pending in court (which agreement was also made without authority) was allowed to be shown before the settlement was entered of record. In *Hargroves* v. *Redd,* 43 *Ga.* 142, it was held that an admission in writing of certain material facts, for the purpose of being used in the trial of a cause, can not be recalled after the trial has commenced. In *Jones* v. *Groover, Stubbs & Co.,* 46 *Ga.* 568, 577, where an attorney had given his consent that a rule absolute should be taken on a mortgage foreclosure, and was absent when it was taken, it was said: "Had counsel intended to withdraw from his consent to let the rule be taken, he ought to have given notice of such intention. That there was, or may have been, a misunderstanding between himself and his client, is no reason why the judgment should be set aside." See also *Kile* v. *Lumpkin,* 40 *Ga.* 506. So in *Southwestern R. Co.* v. *Atlantic & Gulf R. Co.,* 53 *Ga.* 401, it was held that when counsel on both sides have entered into a written agreement as to certain facts, it is not competent, on the trial, for the party who introduced such statement to the jury to prove a fact contrary to what was stated in the agreement; and that, to avail himself of this right, proper notice should have been given. And see *Wilson* v. *Bank of Louisiana,* 55 *Ga.* 98; *Western & Atlantic R. Co.* v. *Johnson,* 59 *Ga.* 626; *Caldwell* v. *McWilliams,* 65 *Ga.* 99; *Daniel* v. *Foster,* 49 *Ga.* 303; Rosenbaum *v.* State, 33 Ala. 354, 362; Bradish *v.* Gee, Ambl. 229.

In Union Bank *v.* Geary, 5 Peters, 99 (8 U. S. (L. ed.) 60), in an action on a promissory note, the attorney for the plaintiff agreed with the defendant, whose intestate was an indorser on the note, that if such defendant would not dispute the liability but

would confess judgment, the attorney would immediately proceed by execution to collect the amount from the maker, who, he said, had sufficient property to satisfy it. The defendant confessed judgment. Proceedings were not taken to enforce the claim by execution against the maker, and he removed with his property beyond the jurisdiction. It was held that proceedings on the judgment confessed by the administratrix of the indorser would be enjoined; and this enforcement of the agreement was not affected by the fact that, by a subsequent judicial decision, it had been determined that the defense which, but for the agreement, would have been urged was not good and would not have been sustained. In North Missouri R. Co. v. Stephens, 36 Mo. 150 (88 Am. Dec. 138), it was held that where several suits were brought by the same plaintiffs against different defendants, the defenses being the same in each case, and the attorneys for the several parties agreed that all of the cases should abide the final decision in one case, such agreement was within the authority of the attorneys and was binding upon the parties; and that this was true although the question involved in the case in which the stipulation was given had been changed by the repeal of an act of the legislature, which might have changed the result in the second case but for the agreement. See also McCann v. McLennan, 3 Neb. 25, 29.

From the foregoing discussion it will be seen that if admissions have been improvidently made in the progress of a suit, upon due notice the court may allow them to be withdrawn, if no injury would happen to the adverse party from having relied or acted on them. In such a case due regard should be had to the rights of the adverse party, and that he be not misled and allowed to act to his injury in reliance on the admissions of his adversary, and then have them withdrawn. An agreement that one suit shall abide the result of another, where one is tried and the plaintiff allows the other action to stand without urging it to judgment promptly, in reliance upon the stipulation, is more formal, and can be less easily set aside. Perhaps few strongly contested cases are tried in which some point does not suggest itself to the mind of the losing party or his counsel in which he might strengthen his case, if he had another opportunity. But considerations of this kind would not require the opening or setting aside of an agreement to abide the final result of the case tried. It would seem that, in

cases of fraud in procuring the agreement, relief may be had, and also in cases of mistake of fact in making the agreement, if it would work no wrong to the adverse side. In this case the proceeding is not by regular equitable suit but by application to the court to allow an .agreement to be opened or set aside, by invoking his coercive power over counsel, in the interest of the administration of justice. If relief can thus be had after the case has not been pressed ·to trial, but has been allowed to stand until the other case has terminated, at least there is no arbitrary or absolute right to have such relief; but the nature of the two suits involved, the circumstances attending the making of the stipulation, the knowledge of the parties or their attorneys, or the opportunity for knowledge of all the facts, the time when the effort to open the agreement was made, the notice given to the adverse party, whether the latter would be placed in statu quo by the allowance, and all the circumstances may be legitimately considered by the court.

Here the agreement in writing was made on May 11, 1905, in open court, before the case of the Home Insurance Company was tried. The verdict in that case was against the defendant for the full amount of the policy, less a small credit on account of a premium. The judgment was brought to the Supreme Court, and affirmed. The plaintiff did not then press its case on the other policy to trial and judgment, but allowed it to stand for disposition under the terms of the agreement. The trial of the present case came on more than a year later, on November 12, 1906. Both parties announced ready, and the jury was impaneled. The bill of exceptions states that the "defendant then in open court tendered to the plaintiff in money the amount of principal and interest conceded to be due in its amended answer filed November 12, 1906, which tender was by the plaintiff refused." The motion to be allowed to open or go behind the agreement was filed on the same day; whether before or after the trial began does not appear. As stated before, the policy issued by the Home Insurance ·Company and that issued by the present defendant were identical in form, and contained the same items of property and the same clause in regard to· proration. The same agent represented both companies at Bainbridge, Decatur county, the county in which· the property insured was located. The schedule of prop-

erty attached to the policies showed that there were four buildings. The schedule aggregated $41,000. After the fire, proofs of loss were furnished to each company, which may or may not have been in strict accordance with the requirements of the policies; but they showed that the plaintiff did not make out its claim as being for pro rata parts under separate items of the schedule, but for all the machinery and property which was destroyed, to the extent of the entire policy, in one list aggregating $44,117.17, which was more than the combined amount of both policies. The proofs of loss also showed that only two buildings were specified as having been destroyed. After the fire the president of the plaintiff company wrote to Graves, as the agent of the Home Insurance Company, notifying him of the destruction of the sawmill by fire, and saying, "We would be glad if you will have your adjuster examine the property as early as convenient." In his reply (signed Graves & Co.) Graves noted the request to have "adjusters" examine the property, but said that "The policies of the Chattahoochee Lumber Company were cancelled on February 19, and return premium paid, for which we hold acknowledgment from Vice-President Cummings. Therefore you had no insurance with our office at the time of the fire, policies having gone on to the company cancelled." It is thus evident, that, though living in the same county where the fire, alleged to have consumed over $44,000 worth of property, occurred, and though invited to have the property examined, and afterwards receiving proofs of loss which showed only two of the four buildings as claimed to have been destroyed, he or the insurance company preferred to plant themselves upon the defense of cancellation, and to rely solely upon it. It appears in the evidence that Mr. King, of counsel for the defendant, had no idea that there was any question about the loss being total until about the last of August or the first of September, 1906; and that Mr. Little, also of counsel, had never heard, until October 2, that the entire plant was not destroyed. It is neither alleged nor was any evidence introduced to show that the company or its agents were ignorant of the facts, or of the agreement made by counsel; or that the company could not readily have known the facts; or, if it knew them, why it did not communicate them to its counsel. No claim of fraud or misrepresentation on the part of adverse counsel in procuring the agreement is made. It does not appear

that the agreement would not have been made had all the facts. been known to counsel, though possibly they might have urged an additional defense in the test case. At least two possible questions appear to have been in each case: first, was the company liable on the policy at all; and second, if so, was it liable for the full amount of the policy, or for some less amount? Both of these questions were concluded as to the Home Insurance Company against it; and we can not say that the presiding judge erred in holding the present defendant to be likewise concluded.

2-3.   Objection was made to the admission of letters from the Chattahoochee Lumber Company to Graves as agent of the Home Insurance Company, and from Graves to the Lumber Company, and from the Home Insurance Company, by Messrs. King, Spalding & Little, its attorneys, to the Lumber Company. The ground of objection was that they were not written to or by the defendant, or on its behalf, and were not admissible to bind it. If the two cases had been tried independently, of course communications with one company would not have affected the other. But it will be remembered that the case against the Home Insurance Company was selected as a test case, and that it was agreed that the other case should abide the result thereof; and also that the present proceeding involved a construction of and .the motion to open the agreement, and the question of knowledge of the facts, and the opportunity for knowledge on the part of the defendant or its attorneys as to the extent of the loss. The letter of Graves, the local agent, in reply to that of the plaintiff, did not confine itself to the policy of the Home Insurance Company, but declared that the "policies" had been cancelled, and that the plaintiff had no insurance at the time of the fire; thus dealing with the defendant's position as well as that of the other company. The letter of the attorneys for the Home Insurance Company also indicated that it had received and transmitted. to them proofs of loss which were similar to those above referred to; and while they denied liability, they also suggested certain alleged defects in the proofs. Under the circumstances, there was no error in admitting this evidence.

4.   Error was also assigned, because, after the evidence closed, and the plaintiff's attorney was about to proceed to make an argument to the jury, counsel for defendant moved that a verdict be directed for it; to which adverse counsel responded that he also

desired to move the direction of a verdict for the plaintiff. Both claimed the opening and conclusion of the argument on the motion. The court-awarded it to the plaintiff. In this we are inclined to think he erred. Counsel for the plaintiff urged before us, that, if the defendant were allowed to move for a verdict and obtain the opening and conclusion, though the argument would, in the eye of the law, be addressed to the court, it would be in the presence of the jury, and would substantially deprive the plaintiff, on whom rests the burden of the case, of the right to open and conclude. The plaintiff has the right to open and conclude before the jury, except in certain instances where the defendant has admitted a prima facie case; and the defendant can not affect that right by a motion to direct a verdict. If the discussion of the motion in the presence of the jury is calculated to injuriously affect the plaintiff's right to open and conclude before them, the judge, on request of counsel, or of his own accord, can have them retire, while the motion to direct a verdict is being discussed. Indeed, we think this practice is to be commended as conducive both to moderation and brevity in the presentation of the motion to the court, in the absence of the jury; and also because it affords the judge an opportunity, if he deems it necessary, to refresh his memory as to the testimony and to call the attention of counsel to it, without danger of affecting the jury or appearing to intimate an opinion in their presence. While the ruling of the court on this point may have been erroneous, we can not say that it was harmful error, under the facts of this case. There was a motion on each side to direct a verdict. Formally the motion of the defendant would first have been taken up, argued, and disposed of; and then the motion of plaintiff would have been heard and determined. On the motion first made, the defendant would have opened and concluded; and on the second motion the plaintiff would have opened and concluded. This court has several times held that while a presiding judge may, under certain circumstances, direct a verdict on motion, in no event will he be reversed for refusing to do so. Hence, had the defendant alone moved to direct a verdict, no matter who might have opened or concluded the argument on the motion, the judge's refusal to grant it would not have necessitated a new trial. To save time, instead of hearing the defendant's motion and overruling it, and then hearing the plaintiff's motion and granting it,

the court heard both together. The question of whether there should be a reversal must at last hinge upon whether the direction given was erroneous. Having held that there was no error in directing a verdict for the plaintiff, the mere question of opening and conclusion would not require a reargument and a redirection of the same verdict. *Collier Co.* v. *Murphey,* 108 *Ga.* 777 (33 S. E. 641).

Both sides asked for the direction of a verdict. Neither side asked to go to the jury. *Lydia Pinkham Medicine Co.* v. *Gibbs,* 108 *Ga.* 138 (33 S. E. 945).

*Judgment affirmed. All the Justices concur, except Holden, J., who did not preside.*

### ON MOTION TO REHEAR.

A motion for a rehearing has been made in this case.

After a careful examination, the motion is denied. We have not misapprehended the case. We are merely constrained to differ with the counsel for the movant in their view of the law. We think the principles announced in the opinion heretofore prepared control the case; but as counsel have urged with great earnestness that, under all the facts, there should be a different result, we will discuss the facts somewhat further. The written agreement which was made by counsel for both parties in this case in open court contained the following material part: "It was agreed in open court by the counsel for the plaintiff and defendant in the above suit that the same abide the result of a similar suit in favor of the Chattahoochee Lumber Company *vs.* Home Insurance Company; and whatever may be the final result in the termination of the latter suit, the same result is agreed to be the final termination of the suit *vs.* the Commercial Union Assurance Company." This is plain, clear, and unambiguous in its terms. Each suit was for the full amount of the policy. The first case was then tried, and the other was allowed to stand to await the final result thereof. That result was a verdict on May 11, 1905, for the full amount of the policy (less a small amount of premium which had been returned in an ineffectual effort to cancel). The case was brought to the Supreme Court, and the judgment was affirmed on August 17, 1906. The second case came on for trial on November 12, 1906. The only way in which the final result of the first case could be made the final result of the second was to enter a similar verdict and judgment. A verdict for one half or two thirds, or any other frac-

tional or proportionate part of the $5,000 named in the second pol-
icy, and sued for, would not be the same final result as that.
reached in the first case. It is clear that, if the agreement made:
should stand unaltered, the only possible result in the second case·
was the one stated. To reach any other result, a reopening in.'
whole or in part, a modification, or a rescission, was absolutely· es--
sential. There was no consent of parties to reopen the agreement,
so as to reach the result desired by the defendant; and the· only
way to reduce the verdict from one similar to the former verdict
was to obtain a reopening of the agreement in whole or in part,.
or its rescission, by some proper proceeding before the court. The·
defendant, at the trial, filed a plea alleging, in effect, that since·
the decision of the Supreme Court in the other case it conceded!
liability under its policy "in the manner and to the extent herein--
after stated," and withdrew all its answer and defense previously·
filed to the contrary; but averring that the insurance, according to·
the terms of the policy, was not on the property in gross, but the·
property was divided into items, "the insurance on each item be--
ing such pro rata part of $5,000 as the valuation or amount set·
forth in said item bears to the aggregate of the valuation or amounts:
of all of said items;" that since this suit was brought the defend--
ant had been informed by the plaintiff that certain named items.
were not burned in whole or in part; that such was the fact; and
therefore the defendant calculated the amount which it conceded
to be due, and tendered it, with interest, and prayed that judgment·
be rendered against the defendant only for that amount and costs.
The bill of exceptions shows that the tender made in accordance·
with this. plea was refused by the plaintiff. Of course, the filing·
of such an amendment, or the judge's allowing it to be filed as:
pleading, did not operate to open or change the agreement which·
had been made. Such amendment was not evidence, and the ad-
verse party was not required by law to file any denial or traverse·
of it. The agreement still stood of force. The defendant then
filed a motion, setting out that the agreement had been made by·
it through one of its attorneys under a mistaken belief as to the·
facts of the case; that, at the time it was made, said attorney was.
in attendance on the court, no agent or representative of the de-
fendant being present, and the attorney was under the belief that.
there was no dispute as to the fact that every part of the property·

insured had been totally destroyed, and that the only issue in the case was the question whether the policy sued on had been cancelled before the fire; that none of the attorneys for the defendant had any information that any of the property had not been destroyed; that since the case of the Home Insurance Company was decided by the Supreme Court said attorneys for the first time learned that all of the items insured were not burned or damaged by fire, but that certain specified items were in nowise damaged by said fire. The motion then concluded in these words: "Defendant avers that the plaintiff does not deny that said items were in nowise damaged by said fire. That said agreement was made by reason and because of said mistaken belief, and defendant moves that said agreement be in nowise taken or held to prevent it from now showing that none of said items were so damaged, nor any judgment to that effect be rendered because thereof."

Here, then, was an application to the court touching the agreement. But the allegations were not evidence. We think it would be too narrow and technical a view to say that this was a motion merely to construe the agreement. If that were all, we have stated above what we considered to be the inevitable construction of the agreement as it stands; and no written motion, with allegations touching mistake of fact on the part of counsel in entering into it, would have been necessary to merely construe a written agreement. While the words "reopen" or "reopen in part" were not used in the motion, but those before quoted, we think the motion should be treated as substantially one, not merely for construction, but also to allow the agreement to be reopened to the extent indicated. The following excerpts from the brief of counsel for plaintiff in error set forth certain positions taken therein touching this agreement: "The agreement entered into in open court between attorneys for plaintiff and attorneys for defendant in the court below, that this cause should abide the result of a similar suit in favor of the Chattahoochee Lumber Company *v.* Home Insurance Company as set forth in the bill of exceptions, binds the defendant below, plaintiff in error here, only as to the one issue upon which the case of Chattahoochee Lumber Company was tried in the court below. . . Even though attorneys for plaintiff in the court below knew that the loss was not total, and intended that the agreement should bind as to the relative proportion of recovery, attor-

neys for defendant in the court below being ignorant of this fact, and the agreement being made in good faith, by attorneys in ignorance of the fact, and, therefore, as to the extent to which the agreement was binding, the minds of the parties to the agreement never met on this phase of the subject-matter, and as to this phase of the subject-matter such agreement is void and should have been so held. . . The mistake as to this agreement which renders it void is not as to the subject-matter of the agreement but the quantity of the subject-matter, and, being such, renders the agreement void (citing authority). . . Substantial admissions of fact made during the progress of the cause under a misapprehension of the real facts are not binding and may be withdrawn. (Citing *Wallace v. Matthews,* 39 *Ga.* 630 (99 Am. D. 473), which is considered in the original opinion.) . . A mistake in a settlement of a suit pending in court before it is entered of record and made the judgment of the court is always open to investigation and correction, and if it vitiates the settlement as a whole it should not be made the judgment of the court at all" (citing authority). So that something besides merely construction was urged.

To grant a motion of the character of this one is not a matter of absolute or arbitrary right on the part of the movant, but is an appeal to the power of the court in the administration of justice, and must be determined by the court under the facts. It is said in Greenleaf on Evidence (vol. 1, p. 206) that a clear case of mistake entitling the party to relief must be shown, or he will be held to an admission made in furtherance of a trial. An agreement that one suit should abide the result of another would certainly be as strong, if not stronger, than a mere stipulation waiving certain proof or making an admission; and the party seeking relief must make a clear case entitling him thereto. Any other rule would make agreements of this character of small effect. Has the plaintiff in error brought itself within this rule, and shown that the presiding judge erred in his ruling on the matter?

Evidence was introduced to show that counsel for the defendant thought the loss total, and did not know otherwise until one of them learned of it about six weeks, the other about two months and a half, before the trial. The attorney for the plaintiff who drew the original petition in the case stated that, when he drew it, he thought the loss was total. On the trial of the former case, the

vice-president of the plaintiff testified, among other things, as fol-lows: "The total loss caused by fire on the items mentioned in the two insurance policies exceeded $25,000. The loss on the property covered by each item of insurance set forth in the policies exceeded the amount of insurance carried upon such property. The estimate of the total loss as submitted in the proofs of loss, of something over $44,000, is not excessive." On the trial of the second case he was placed on the stand by the defendant, and stated that certain specified items of property covered by the policy were not burned; that the other items were burned; and that the loss was over $40,000. He said: "My understanding was that each item referred to each policy; if it was asked now, that is the way I would understand it,— each item, the amount of each insurance policy." He was asked by counsel for the plaintiff, "Do you recollect as to whether or not I asked you about the first three items,—as to whether the loss exceeded the amount of the insurance?" (The items named were shown to have been destroyed.) He answered in the affirmative, and added, "I did not mean to convey the impression that the prop-erty on both sides of the railroad track was destroyed. The sawmill property was destroyed. All the property totally destroyed was on the north side of the track."

If the motion made by the defendant should be granted, it must rest upon the contention that, under the circumstances, it would be unjust to allow a verdict to be taken for the amount of the entire policy, when some of the items were not destroyed. It will be observed that this assumes as unquestionable that the pro rata clause in the policy refers to distributing the loss among the items; while counsel for the defendant in error do not concede the position, but in their brief urge, that, where there are more policies than one, words of proration should be construed as referring to prorating among the policies, if the loss be less than the amount of both; and that it was not less in this instance. If the contention now made by the plaintiff in error as to the extent of the liability under the policy is correct, it was just as true of the first policy as it is of the second, and would have been just as good as a defense on the first trial as on the second. We need not decide whether the construction of the policy which the plaintiff in error contends for, or that insisted on by the defendant in error, is correct, further than to say that the position of the defendant in error is not wholly without sup--

port in expressions used by some of the courts, and can not be treated as a mere factious contention. Even in the principal case cited by counsel for plaintiff in error (Citizens Insurance Company v. Ayers, 88 Tenn. 728, 13 S. W. 1090) occurs this expression: "We know of no other construction that can be given to the pro rata provision, where there is no other insurance to which the words can apply." Assuming, however, for the present that the construction contended for by the company is correct, the real point is whether the defendant was in a position to be clearly entitled to the relief which it sought, and whether the judge erred in refusing it,— for that was the effect of his ruling.

Broadly it might be said that no recovery should be had which is not authorized by the facts. But a sweeping application of such a doctrine would destroy the efficacy of agreements of the character of that under review. It would be useless to agree that one case should abide the result of another, if such an agreement meant that it should not do so, in whole or in part, unless the facts authorized the result, and that the contrary might be shown in the second case. There are many cases in which an agreement works a real or apparent hardship, but parties are held bound. Courts will not always reform errors in instruments, if they exist. Laches, negligence, may be such as to prevent relief. Estoppels are based on the position that under certain circumstances the law will not allow a party to show even the actual facts. This is said merely by way of illustration of the statement that any general idea that a verdict should not be permitted where not warranted by the facts is subject to modification by reason of the acts of parties themselves. It may be said that it would be unjust to allow a recovery on the policy in full, when, without controversy, some of the items were not burned. Suppose that counsel for the defendant, instead of learning that some items were not burned, had learned that benzine was kept on the premises, or of any other defense (except perhaps cancellation) which would have avoided the policies and have defeated a recovery at all, would the case have been different? If the company could have shown that it was not liable at all, it would have been even harder to allow a verdict against it than if it was claimed to be liable only for a part of the sum named in the policy. It is no answer to this to say that no such defense was set up, and that liability was conceded as to the items burned. If this defense

could be set up in the second suit, after verdict in the first, on a mere showing that the defendant's lawyers did not know of it until the termination of the former case, we see no sound reason why the same rule would not apply to any other defense which then came to their knowledge, with no showing as to the previous knowledge of their client. The mere fact that proof that some items were not destroyed was made by the vice-president of the company would not alter the case; for any of the other possible defenses suggested might no doubt have been proved by him, if they existed. If this were the case, the agreement would have a very limited effect. In the motion for a rehearing frequent references are made to what is conceded and "admitted" by the plaintiff. We have found in the record no formal admission or concession filed by the plaintiff or placed before the trial judge. The defendant called the vice-president of the plaintiff to prove that certain items were not burned; and the attorney who drew the declaration stated that, when he did so, he thought the loss was total. This is probably what is referred to. But the plaintiff stood on its agreement, as it had a legal right to do until it was reopened or set aside. It was not bound to introduce evidence on the subject of loss, if the agreement in judicio stood.

Is this defendant (not merely its lawyers) in a position which clearly shows that it was entitled to the relief asked of the court? Mr. Graves, the local agent doing business in the county where the fire occurred, issued both policies, and knew what was in them. If such policies insured the property by items, and not for $5,000 and $20,000 on the whole property, he must have known it. He was notified of the fire, alleged to have consumed more than $40,000 worth of property, and asked to send an adjuster to inspect the loss. He doubtless saw the proofs of loss; certainly the company did so. These proofs were not made out for loss on certain items of the policy, but set out all the property claimed to have been destroyed in one list or schedule, thus apparently claiming loss on the policy as a whole. A careful inspection of them would have shown, that, under the statement that "The following is a complete schedule of the property lost by fire, showing the cash value of each item, and the amount of loss claimed thereon," only two buildings were claimed to have been destroyed, while the policy showed that four were insured, thus on the face of the proofs showing that some of

the property insured was not burned. The suit, claiming payment of the full amount of the policy, was served on the same agent. There is not a scintilla of evidence that the company and its agent did not know all the facts as to the extent and character of the loss, from the beginning. If they did not, the slightest diligence would have enabled them to do so, and nothing is shown to have prevented their knowledge, unless it was their own negligence. "Ignorance of a fact, due to negligence, is equivalent to knowledge in fixing the rights of parties." Civil Code of 1895, §3933. We do not mean that any admixture of negligence will arbitrarily bar relief in equity in all cases. But in many cases negligence will do so. Civil Code, §§3984, 3974, 3711. If they did know the facts, and failed to inform their attorneys of this defense, their appeal to the coercive power of the court to relieve them from the results of their own conduct presents no merit. It may be taken for granted that the attorneys informed the company of the agreement which had been made. No objection or prompt suggestion of a correction, or of an additional defense, or notice to the adverse side, was shown. So far as the evidence discloses, the company, with full knowledge or notice, may have been satisfied to risk its case on the defense made in the first case, and thus allowed the opposite party to rely on the agreement instead of pressing the case to trial, waited some eighteen months until after the other case had been finally lost, and the defense there set up had proved unavailing, and then asked relief from the results of the agreement because their attorneys were not informed until then of this fact, which amounted to a partial defense to the suit to recover the full amount of the policy. We do not say that the evidence discloses affirmatively that such were the facts; but we do say that there is no evidence that the company and its agent did not know of the facts, and if not why not, save for negligence, and why they did not communicate such facts, if known, to their attorneys long before the time indicated. He who alleges error must show error, in order to obtain a reversal. Under the evidence introduced and the silence of the evidence on this vital point, no right to a reversal is shown in this case.

There was no allegation or proof that the agreement was induced by fraud. The declaration did allege a total loss, but one hardly accepts his adversary's allegations as a basis of agreement, without more; and the answer which the defendant filed indicated an unwill-

ingness to admit such allegation in full, but only admitted that the fire "destroyed or damaged" the property described in the policy, and added that it could not admit or deny the other allegations of that paragraph of the petition which alleged a total loss, for want of information. If there was anything misleading in the evidence of the vice-president of the plaintiff on the first trial (and we do not say whether there was or not), it could not have affected the making of the agreement, for it was delivered after the agreement was made; as the bill of exceptions states that the agreement was made before the case was tried. Nor is there any showing that, had all the facts been known to counsel, the same agreement would not have been made, though the point now raised might have been urged then.

A reference was made in the opinion, previously prepared, to the fact that this was not a regular proceeding in equity, but a motion. We did not hold that a proceeding in the nature of a bill in equity was the exclusive remedy; but a proceeding in equity to obtain relief against a mistake (as in a deed or other instrument) and a motion like the one here discussed involve some difference in practice. An ordinary suit to obtain equitable relief looks ultimately to a jury trial (if the case withstands a demurrer and a motion to dismiss in the nature of a nonsuit, which may be made). A motion of the kind here made is addressed to the judge presiding, in the exercise of his coercive power in the advancement of justice,— not to the jury. In strict practice, the motion should have been made to the presiding judge, and his ruling invoked on it distinctly, under the facts presented; and if he sustained it, and allowed the defense to be made, the case should then have proceeded to the jury; or if he refused to allow the defense to be set up, he should have then directed a verdict under the agreement. As this was not done, but the whole matter was dealt with together, and after the evidence closed the judge directed a verdict, this was substantially a ruling against the motion.

In the opinion previously prepared, in stating the contention of the amended plea this language was used: "Therefore it is claimed that it was not liable for the full amount of its policy, but only for a pro rata amount determined by the ratio of the value of the items which were destroyed to the value of the whole property insured." The word "value" as here used referred to the value stated

in the policy, not to value proved by evidence outside of the policy. It was used in the sense of valuation.

After a careful examination of the entire case, we can not say that the judge erred.