Ferguson *vs.* Ferguson *et al.*

---

HENRY FERGUSON, plaintiff in error, *vs.* SOCRATES G. N. FERGUSON, executor, *et al.*, defendants in error.

1. A testator who died in 1863 bequeathed $3,000 00 to his executor in trust for three of his grand-children. The bequest was to be "set aside as soon as the debts and expenses were paid." The balance of his estate was given to his son (the executor,) and to his daughter, Mrs. Flannegan. The grand-children filed their bill against the executor for their legacy, alleging that he and Mrs. Flannegan, after paying the debts, divided the land and negroes between them in November, 1863, and that such a division was a *devastavit* on the part of the executor. The bill did not waive discovery. The executor answered that the debts of the estate had not been paid at the time of the alleged division; that the creditors would not receive Confederate money; that he would not sell property to raise the $3,000 00 for the grand-children in Confed-

erate money, and on account of the war and the condition of the country, he and his sister, the other residuary legatee, did, in November, 1863, divide the land and negroes between them as a temporary arrangement, on the express agreement and understanding that the title should not pass, but the same was to be held subject to the debts of the estate and legacy of complainants, until a suitable time should arrive when a sale could be effected for good money; that it was so held until after the war, and in 1866 the land was regularly sold by him, as executor, and for full value.   By amendment to the bill Mrs. Flannegan, Harmon and Willis, who had purchased the land, were made parties, and a decree was prayed against them, that their deeds should be canceled and the land declared subject to complainants' legacy:

*Held*, that the arrangement made by the executor with the other residuary legatee, at the time and under the circumstances it was done, was not such an appropriation of the assets of the estate as to make him liable for the same as for a *devastavit*.   The possession of the land having been resumed by the executor and regularly sold in 1866, the proceeds of the sale was subject to administration for the purpose of paying debts and legacies; and as there is no contest that the land did not sell for its value it cannot be again made liable to the same claims.

2. There having been no motion for a new trial, and there being no charge of the court to prevent the jury from making allowances in their verdict for the rent and hire of 1864, and rent for 1865 and 1866, and no refusal to charge any request on that point, we cannot inquire into any alleged error in the verdict for not including the same.

3. The answers of the defendants, so far as they go to explain the arrangement made for the disposition of the land and negroes in November, 1863, are, under the charges in the bill, responsive, and were properly submitted to the jury as evidence.

4. It is not necessary that a defendant should make an affidavit of any sort for the purpose of amending his answer, unless in the case of a sworn answer to make oath to the amendment.

5. When a complainant does not rely on the answer of the defendant, and introduces other evidence on the trial, the defendant, if he offers no evidence, is entitled to the conclusion in the argument to the jury.

Administrators and executors.   New trial.   Equity.   Discovery.   Amendment.   Order of argument.   Before Judge POTTLE.   Lincoln Superior Court.   October Term, 1873.

Henry Ferguson, for himself, and as next friend of his minor brothers, Davenport and Socrates Ferguson, filed his bill against Socrates G. N. Ferguson, as executor upon the

state of John Ferguson, deceased, making, in substance, the following case :

John Ferguson departed this life about February 17th, 1863, leaving a will, by the fourth item of which he bequeathed to complainant and his said two minor brothers (his grand-children,) a joint legacy of $3,000 00, in equal parts to each, to be set aside for this purpose out of his estate, as soon as the debts and expenses of the same shall have been paid. By the fifth item, the testator directed the sale of such of his personal and real property as might be necessary for the payment of his debts and said joint legacy, in the event that the sale of his perishable property should prove insufficient for that purpose. The will was admitted to probate, letters testamentary issued to defendant, and he took possession of the estate, consisting of lands and personalty, amounting to about $25,000 00 in value. The defendant, after selling a portion of the perishable property and paying the debts of the estate, in violation of the provisions of the will, in the month of November, 1863, proceeded to a division in kind of the lands and negroes between himself and his sister Elizabeth Flannegan, the residuary legatees. The hire of the negroes for the years 1863, 1864 and 1865, amounted annually to $250 00. The rent of the land for the same years, and until the month of November, 1866, when it was sold by the defendant, was worth $250 00 per annum. These sums are assets in the hands of the defendant for the payment of debts and legacies, and are not the property of the residuary legatees. Complainant and his said minor brothers have never been paid said legacy. The aforesaid division of property was an assent to the legacy and an admission of assets. Prayer, that an account be had, and that a decree be rendered for the payment of the same, etc.

The defendant presented the following facts in his answer :

Denies that in November, 1863, he proceeded to a division in kind of the lands and negroes of the estate, between himself and his sister Elizabeth Flannegan, after the payment of all the debts, but alleges the contrary to be true, that the di-

Ferguson *vs.* Ferguson *et al.*

vision was made under an express agreement between himself and Elizabeth Flannegan, that the property was to be held subject to the unpaid debts of the estate and the legacy bequeathed to complainant and his two minor brothers. The legacy was not paid at the time appointed by the will, for the reason that the currency of the country was then almost entirely worthless, and defendant having been appointed trustee for the said legatees, did not consider it right or just to set aside said legacy in such currency which many of the creditors were refusing to receive. He hoped and believed that the time would come when the land and negroes could be sold for good currency, and an amount realized sufficient to pay the debts, the legacy to complainant and his brothers, and to leave a residuum. Contrary to his expectations a large portion of the estate was lost by the emancipation of the negroes. After the termination of the war he sold the said lands, and appropriated the proceeds thereof to the payment of the debts of the estate. On account of the scarcity of money in the country, the sale was not as favorable as he had anticipated, and he advanced money and property of his own in the settlement of said debts. All of the property of the estate which came into the hands of the defendant, has, in good faith, with the exception of the negroes, who were emancipated, been applied to the satisfaction of the debts.

To the answer were attached inventory, returns, etc.

The complainants, by an amendment, made Thomas P. Harmon, Elizabeth Flannegan, and Isaiah Willis, purchasers of said land, parties defendant, alleging collusion with the executor, etc. The answers of these defendants set up, in substance, the same defense presented by the answer of the executor, also improvements placed on the property, the good faith of their purchase, and the absence of all fraud and collusion.

The complainants again amended his bill by surcharging and falsifying the accounts of the executor as appended to his answer. To this the executor filed an amended answer, unnecessary to be set forth.

Neither the bill, nor any of the amendments, contained any waiver of discovery.

When the case was called, counsel for the complainant moved to strike so much of the answers of the defendants as sought to qualify and limit the division of the property among the residuary legatees to a mere temporary arrangement, without vesting in them the title. Also to strike from said answers the plea of *plene administravit* and all averments in support of the same, as being irrelevant, the division of the property having been admitted. Also, to strike the amended answer of Socrates G. N. Ferguson upon the ground that it was not based " on the necessary preliminary affidavit."

The three motions were overruled and complainants excepted.

The court permitted such portions of the answers of the defendants as explained the alleged division of the land and negroes in November, 1863, to be read in evidence to the jury, as responsive to the bill, and complainant excepted.

The complainants introduced testimony. The defendants relied entirely upon their answers. The court awarded the concluding argument to the defendants, and complainants excepted.

The evidence is omitted, as unnecessary to an understanding of the decision.

In reference to the division of the property between the residuary legatees, in November, 1863, the court charged the jury as follows:

"I charge you, that if you believe that the parties to this division, afterwards, in 1866, voluntarily surrendered the land to the executor to be sold in due course of administration, and if it was sold, and fairly sold, in open market, according to law, the executor is not responsible for this part of his *devastavit*, though the evidence should satisfy you that he did assent to the legacy, so as to vest the title in himself and co-residuary legatee. If he did do wrong, that wrong could be cured by a surrender of the land for sale to pay the debts and this legacy."

To this charge complainants excepted.

The jury found for the complainants $690 50, with interest from November, 1866, against Socrates G. N. Ferguson. No motion for a new trial was made.

Error is assigned upon each of the aforesaid grounds of exceptions.

W. D. TUTT; C. R. STROTHER, for plaintiffs in error.

W. M. & M. P. REESE, for defendants.

TRIPPE, Judge.

1. The chief contest in this case was to obtain a decree subjecting the land which had belonged to the testator, and was sold by the executor in 1866, to be sold again for the payment of complainants' legacy. There was no issue made that the land did not sell for its value, or that there was actual fraud committed by the executor and the present owners of the land, which would vitiate the sale. The point raised is, that the executor and his sister, Mrs. Flannegan, as residuary legatees, divided the land between them without the legacy of $3000 00 to complainants having been paid. The bill charges that this was done after the debts of the estate had been paid, and that such a division was a *devastavit* on the part of the executor. The answer sets up that the executor and his sister only took the property under a special agreement that it was a temporary arrangement, and that it was to be held without the title passing, subject to the debts against the estate and the legacy of complainants, and until a suitable time should arrive when a sale could be effected for good money. This was in the latter part of 1863, and reasons are given why no sale was then had, to-wit: the condition of the country from the then existing war and the great depreciation of the only currency in circulation. The land was so held until after the war, and was sold in 1866, and by the returns of the executor the proceeds of the sale went to the payment of the debts, except the amount found in favor of complain-

ants. If there were outstanding debts, they had a priority over the claim of complainants for their legacy; and if the action of the executor and Mrs. Flannegan in the division, was illegal, the creditors did not lose their right to have their debts paid or lose their priority over legacies. They could have forced the very sale that was made, and there is no reason why the executor should not do that, which by law he could have been compelled to do, or which is practically the same thing, do that which the creditors could have effected by obtaining judgments and enforcing a sale under them. In any event, the debts must have been paid. The jury found that these debts consumed a large portion of what the land brought, and there was no motion for a new trial on the ground that the verdict was wrong on that point. So it must be taken as an established fact that the land was sold and the proceeds applied to the payment of debts. If so, it cannot be subjected to a resale.

2. The jury rendered a verdict for complainants against the executor for $690 50, with interest. It was urged that the executor and Mrs. Flannegan were liable for the rent of the land and hire of the negroes for 1864 and the rent for 1865 and 1866. This may have been true. But no motion was made for a new trial. There was no charge of the court excepted to as preventing the jury from making allowance in the verdict for the hire and rent, nor any exception to a refusal to charge a request on that point, and we cannot inquire into any alleged error in the verdict for not including the same: See *McRae vs. Adams*, 36 *Georgia*, 442.

3. The answers of the defendants, so far as they go to explain the arrangement made for the disposition of the property in November, 1863, are responsive to the charge in the bill on that matter, and to that extent were evidence. Any explanation of an admission made, or fact necessarily connected with it, is part of the response: Code, section 3106; 14 *Georgia*, 429; 10 *Ibid.*, 208. The answer on this point comes within the rule. It is true there were no interrogatories with numbers put in the bill; but there was no

·waiver of discovery. A mere omission to insert questions with numbers to them, as set forth in section 4176, Code, does not deprive a defendant of the benefit of his answer so far as it is responsive to the charges in the bill. He may confine his discovery to those points to which special interrogatories are placed in the bill, (Code, section 3104,) but that is a privilege, and no right is lost thereby. If a complainant wishes to avoid making the answer of the defendant evidence, he must, under Code, section 3101, waive discovery.

4. Besides the very broad provisions of section 3479, Code, allowing amendments, it is specially declared in Code, section 4195, that "a sworn answer is subject to amendment at any time, by leave of the court, as other pleadings; but an admission made in such answer shall always be evidence, when offered by the other party." It is not necessary that an affidavit of any sort should be made by a defendant for the purpose of amending an answer. There might be cases in which the court, in its discretion, might be authorized to require a statement under oath of the facts connected with making the amendment, before leave would be granted for allowing it to be made. Indeed, this was the general rule as to permitting amendments to sworn answers: *Martin vs. Atkinson,* 5 *Georgia,* 390; *Cary vs. Ector,* 7 *Ibid.,* 99; Daniels' Pleadings and Practice, 914. But this was before the adoption of the Code, which has put such amendments on the same footing as amendments to other pleadings: Code, sections 3479, 4195. Of course, any answer, whether it be the original or an amended answer, must be sworn to, before it can be used as evidence.

5. Complainants introduced several witnesses before the jury; the defendants offered none. The court held that the defendants was entitled to the conclusion in the argument to the jury. There was no error in this. Section 4207, Code, declares that "the rules of evidence shall be the same as in trials at law, and the rules of practice as to continuance, and in the conduct of the case before the jury, except that when a complainant *relies solely on the defendant's answer,* he shall be

entitled to open and conclude the cause." Complainants did not rely solely on defendants' answers, but introduced other evidence, and so far as we can determine from the record, all the testimony of any kind which was before the jury was presented by them. If so, the conclusion was properly awarded to defendants.

Judgment affirmed.