THE CENTRAL RAILROAD AND BANKING COMPANY *vs.* SMITH.

1. The evidence authorized the verdict.
   (a) The case made by the evidence is substantially different from that made when this case was here before, and the remark made then by the court, as to a verdict for a larger sum than was found for the plaintiff below on the last trial being "so excessive as to disclose either bias in his favor or prejudice against the defendant," is not now applicable.
2. While remarks by the court to the jury upon the rules governing common carriers in regard to passenger-trains, and the duties they owe to passengers in taking them on their trains and transferring them, and in letting them off the trains, did not throw light upon the case on trial, the defendant below does not appear to have been injured thereby.
3. Where the question was, whether the defendant was negligent in stopping the cab of its freight-train near to a dangerous retaining wall and leaving the plaintiff, who had been allowed to take passage on the train, without a light and without notice of the dangerous character of the place, it was proper to charge the jury "that when the defendant brought the passenger to the place where the train was going, all it was bound to do then was to see

that he was afforded reasonable immunity from danger and rea-
sonable protection in getting away from the point where he had
been landed."

4. The illustrations used by the judge in his charge to show what
   kind of care must be exercised by the railroad company under
   different circumstances, contain sound law and were apt illustra-
   tions of the ideas intended to be conveyed.

5. The complaint being, not that the plaintiff did not have proper fa-
   cilities for getting on and off the car, but that the car was stopped
   near a precipice without a light, and without notice to the plain-
   tiff of its dangerous proximity, it was not error to modify a request
   to charge, in substance, that the company is not bound to make
   landings or any provision for the reception and discharge of pas-
   sengers where none are expected to be.

6. Railroad companies are not bound to take passengers on their
   freight-trains, but when they do and receive their money, they must
   not set them down in dangerous places on dark nights, without
   light and without notice of the danger.

7. While the testimony of a witness that he had fallen off the wall
   where the plaintiff was injured was of doubtful admissibility, un-
   less the testimony went further and showed that some responsible
   officer of the company had notice of the fall, and perhaps then it
   would have been admissible only to show, not that the witness fell
   and hurt himself, but that it was a dangerous place and the com-
   pany had notice of it; yet as there is no doubt that it was a dan-
   gerous place and that the company ought to have known it, the
   admission of such testimony was not sufficient to work a reversal.
   April 9, 1888.

Railroads.   Negligence.   Freight-trains.   Passengers.
Charge of court.   Evidence.   Before Judge HARDEN.
City court of Savannah.   July term, 1887.

In addition to the report contained in the decision, it is
necessary to state only the following : The plaintiff testi-
fied; among other things, that from his fall his
nervous system received such a shock that he expected
never to get over it ; that one of his testicles was much
swollen, causing him great pain, and continued to grow
smaller and smaller until it had become almost nothing,
and he considered it entirely lost; and that for a time he
lost control over his seminal discharges, but under the care
of a physician partially overcame this trouble, but in case

The Central Railroad and Banking Company *vs.* Smith.

of anger his discharge was involuntary and uncontrollable; that he had never experienced anything of this kind before; and that he still suffered pain in his back and spine, that ran from his back down into his testicles and gave him great trouble.

The fifth ground of the motion for a new trial was, because the court erred in charging the jury as follows: "Now, was the defendant negligent or not in this case? If the defendant was not negligent, if the defendant used all reasonable care and diligence in taking care of him, if all reasonable and proper care was used on the part of its employés to see that he got from the place where he was put out into the city, then the defendant would not be guilty of negligence, would not be liable; but if it did not, then it would be liable."

LAWTON & CUNNINGHAM, for plaintiff in error.

J. R. SAUSSY, *contra.*

SIMMONS, Justice.

Smith brought suit against the Central Railroad and Banking Company for damages; wherein he alleged that he made a contract with the defendant whereby it agreed to carry him safely, for a certain sum of money, from station number 6 on its road to the city of Savannah, on a freight-train; and that upon arriving at his destination, the train was stopped, so that the car upon which he was riding was carelessly and negligently placed in close proximity to a dangerous and exposed pitfall or retaining wall, in the dark and without a light; that this wall was twenty feet high from the ground, and without any railing thereon to serve as a guide or protection; that no light was furnished and no notice given of the existence of the wall or his proximity thereto; and that in attempting to make his way from the car to the passenger depot of the defendant, he fell over the wall and was in consequence greatly injured.

Upon the trial of the case the jury returned a verdict in his favor. The defendant made a motion for a new trial; which motion was overruled by the court; and the defendant brings the judgment overruling said motion to this court for review.

The first three grounds of the motion are the usual ones, that the verdict is contrary to law, to the evidence, and against the weight of evidence. The 4th ground is that the verdict is excessive. The 5th, 6th and 7th grounds complain of the charge of the court as given. The 8th ground excepts to the admission of the testimony of James Watts.

1. We have carefully considered the evidence as disclosed by the record in this case, and we think it authorizes the verdict of the jury. It shows, in brief, that the plaintiff in the court below was a passenger on a freight-train of the defendant, and was carried thereon from Station No. 6 to the city of Savannah, where the train arrived between eleven and twelve o'clock on a dark night; and that the conductor left him in the car, without notifying him of his arrival, and took with him the only lantern that was on the train. Alongside the track at this point, and some three or three and a half feet from it, was a wall, the height of which on the side next the track was from five to eight inches from the ground, but on the outer side was from fifteen to twenty feet high from the ground; this difference being caused by the banking up of the dirt on the one side for the purpose of making a road-bed for the track. The plaintiff was told at this point, by one of the train-hands, to leave the cab, but no light was furnished him and no notice given him of his proximity to the wall. One of the employés connected with the train took his luggage and proposed to guide him to the depot; and in following this guide, his feet repeatedly struck against what he took to be the ends of the cross-ties, and to avoid them he made two steps to the right, and upon making the second step, fell from the top of the wall to the ground on the other

side, a distance of perhaps twenty feet, and was badly injured, receiving a shock to his nervous system which confined him to his bed for some weeks and incapacitated him from business for months, during which time he suffered great pain, physically and mentally, as well as other damage to his person, the character of which is more fully set out elsewhere in the report of this case.

These, in substance, were the facts before the jury on the trial of the case which we are now reviewing. If they are true (and the jury by their verdict have so found them), we think that they authorize the verdict,—that the verdict was not against the weight of the evidence, nor contrary to law, as claimed by the plaintiff in error, nor was it so grossly excessive as to authorize this court, under the facts above recited, to reverse the judgment of the court below in refusing to grant a new trial upon that ground.

It is contended, however, by counsel for the plaintiff in error, that this court, when the case was here before (76 Ga. 209,) decided, upon the same state of facts, that "a verdict in favor of the plaintiff for $10,000 is not only flagrantly extravagant, but so excessive as to disclose either bias in his favor or prejudice against the defendant"; and counsel contend that this court in the present case is bound by this decision, the facts being the same. We have compared the facts as reported in 76 Ga. and the facts as disclosed by the record in the case now before us, and upon the only question decided by this court before, namely, as to contributory negligence, we think the facts are now very different. The evidence, as stated in the report of the former case, showed that the cab was stopped on the second track from the wall, which would place Smith twelve or fifteen feet from the wall, and hence, in order for him to have fallen over the wall, in the distance which it was said he walked, it would have been necessary for him to go at right angles from the cab instead of following his guide. The evidence in the present case, however, shows that the cab was stopped on the

track nearest the wall, and that the path between the track and the wall was only three to three and a half feet wide; so that to step over the wall as he did would only require a divergence to the right of about two steps, as Smith claimed it to be in his testimony. Again, the statement of the facts, as they appear in Judge HALL's opinion in the former case, shows that the wall was two feet high from the ground on the side next the railroad; whereas the record of the present case shows that the height was from five to eight inches. On the former trial, " Allen's bougie " was mentioned as having been used by the plaintiff; and Judge HALL, in his opinion, very naturally concluded that it was an instrument, and that the plaintiff had injured himself by its use, as was contended by the defendant. In this case it is explained that " Allen's bougie " was not an instrument, but was a medicine, and that the plaintiff was not injured by its use. On the former trial, the evidence was that the plaintiff had not recovered from an attack of venereal disease, and that the loss of his testicles and other damage complained of might have resulted from this cause, instead of from his fall. In the present case it was proved beyond all doubt, by his attending physician, that he had fully recovered from that disease some months before he was injured by this fall, and that the disease could not possibly have contributed to the loss of his testicle. Other differences might be shown, if it were necessary, between the testimony as reported in 76 *Ga.* and the testimony as it is now before us. But we think that the differences we have alluded to are sufficient to show that the case, as presented to the court when it was here before, is not the case which we are now considering. If it were true that Smith alighted from the car at a distance of twelve or fifteen feet from the wall, as shown in the report of the first trial, and that the wall was two feet high; and if it were true that the bougie referred to was an instrument instead of a medicine, and that he had not recovered from the venereal disease, then

the court was right in holding, as it did in 76 *Ga.*, that if the defendant was guilty of any negligence at all, it was slight, and that the negligence of the plaintiff appeared to have been greater than that of the defendant. But we have shown that these are not the facts in the case we are now reviewing. The facts before us show, on the contrary, that the negligence of the plaintiff was slight and that of the defendant greater. Viewed in the light of the facts now before us, the verdict does not strike us as being excessive, as it did the court on the first trial. In view of the facts disclosed by this record, we do not think this verdict is so excessive as to show bias or prejudice against the defendant.

2. The 5th ground excepts to a part of the charge of the court set out therein, as will be seen from the report of this case. We do not think that the dissertation of the judge upon the rules governing common carriers in regard to passenger-trains, and the duties they owe to passengers in taking them upon their trains and transporting them, and in letting them off the trains, threw any light upon the subject which the jury were then investigating; but we cannot see wherein the defendant was injured thereby. It simply informed the jury that a passenger on a passenger-train was entitled to more rights and comforts than a passenger on a freight-train. And whether this charge stated the law as to passengers correctly or incorrectly, it could not possibly mislead any juror of ordinary intelligence.

3. The only question before the jury was, whether the defendant was negligent in stopping the cab near this wall and leaving the plaintiff without a light and without notice of the dangerous character of the place. And on this subject we think the court instructed the jury properly when he charged " that when the defendant brought the passenger to the place where the train was going, all it was bound to do then was to see that he was afforded reasonable immunity from danger and reasonable protection

in getting away from the point where he had been landed."

4. The 6th ground of the motion complains as to the illustrations given by the judge in charging the jury upon the duties of railroads to passengers. The illustrations given by the judge tended to show what kind of care must be exercised by the railroad under different circumstances. The first illustration was, that if a railroad stopped its train upon a trestle over a river in the day-time, and told the passenger that he must get out, that that was as far as the train would go, and if the passenger stepped out and stepped into the river, the railroad would not be liable; but that if the train stopped at the same place on a dark night, and the passenger was told to get out, without being notified that they were on a trestle and over a river, and he stepped off and was injured in consequence, the railroad company would be liable. We do not see why this is not sound law and an apt illustration of the ideas intended to be conveyed by the judge. My own experience in instructing juries on the circuit bench is, that jurors will more frequently comprehend an idea given in the way of illustration than they will when simply given as an abstract principle of law. At any rate, we do not see how the defendant was damaged by this illustration, especially as the judge told them it did not apply to this case.

5. The 7th ground complains that the judge modified the requests of the defendant. We do not think the court erred in adding to or modifying the requests to charge as complained of. The defendant requested the court to charge an abstract principle taken from the syllabus of this case in the 76th *Ga.*, which was, in substance, that the road is not bound to make landings or any provision for the reception and discharge of passengers where none are expected to be. The complaint in this case is, not that the plaintiff did not have proper facilities for getting on and off the car, but that the car was stopped near a dangerous precipice without a light and without notice to the plaintiff of its dangerous proximity.

6. And we think the court was right in instructing the jury that under such circumstances, the company was bound to exercise reasonable care and diligence with reference to permitting the passenger to leave the train where they put him down. Railroad companies are not bound to take passengers on their freight trains, but we think that when they do take them and receive their money, they must not set them down in dangerous places on dark nights, without light and without notice of the danger.

7. The 8th ground complains of the admission of Watts's testimony, that he had fallen off the wall where the plaintiff was injured. It is doubtful if this evidence was admissible, unless the testimony went further and showed that some responsible officer of the company had notice of the fall; and it would perhaps only have been admissible then to show, not that Watts fell and hurt himself, but that it was a dangerous place and that the company had notice of it. But as there is no doubt from the evidence that it was a dangerous place in the night-time, being twenty feet high and without a railing or guard on the top of it, and as the company ought to have known of its dangerous character from the fact it had been there so long, we do not think the admission of Watts's testimony is sufficient to work a reversal in this case. If it were taken out of the case entirely, we do not see that the finding of the jury would be affected one way or the other.

Judgment affirmed.