UNITED STATES FIDELITY AND GUARANTY COMPANY
*v.* CLARKE *et al.; et vice versa.*
RICHMOND COUNTY *et al. v.* CLARKE *et al.*

775

776

*William K. Miller* and *Bussey & Fulcher,* for plaintiff surety.

*Curry & Curry, Pierce Brothers,* and *Isaac S. Peebles Jr.,* contra.

Reid, C. J., Bell and Jenkins, JJ. George F. Lamback was treasurer of Richmond County from November 2, 1920, to the date of his death, September 26, 1926. During this time Walter E. Clarke was employed as a clerk in his office. On September 28, 1926, Clarke became treasurer, and held this office through successive terms until March 4, 1929. On that date Clarke resigned as treasurer and assumed all responsibility for a large shortage in that office, some of which had occurred while he was acting as clerk to Lamback, and some of which had occurred during his own successive terms as treasurer. The United States Fidelity and Guaranty Company (hereinafter referred to as the surety company), as surety on Clarke's several official bonds as treasurer, having, on August 16, 1929, paid off certain executions issued against Clark and itself in favor of Richmond County for his defalcations as treasurer, claimed the right, as subrogee, to enforce and foreclose the statutory lien of the county as against the assets of said defaulting treasurer, Clarke. The petition sought to have the statutory lien thus vested in the surety company declared superior to a certain security deed executed by Clarke and his wife on April 1, 1929, conveying certain described realty and personalty as security to Woodward et al., personal sureties on the official bond of Lamback, for the purpose of holding the grantees "harmless from any loss that might occur by reason of said shortage," and superior also to a levy on the property described in this security deed, made by the deputy sheriff of Richmond County, under an execution in favor of Richmond County against Lon Fleming as administrator of the estate of Lamback, and his personal sureties. The petition set forth the

purchase of various pieces of property by Clarke during his terms as treasurer. It further alleged the receipt by Ruth M. Clarke, wife of Clarke, of a deed to certain property (hereinafter referred to as the Highland Avenue property) from Mary W. Timberlake on July 27, 1922, on which a security deed was given to Adair Realty and Trust Company to secure a loan of $5000 on July 27, 1922, which security deed was paid off and canceled on December 12, 1925, with money supplied by Clarke.

Clarke, his wife, and Woodward and the other sureties on the bond of Lamback filed a joint answer. The answer admitted practically all of the material facts set up in the plaintiff's petition (except the fact that the $5000 security deed on the Highland Avenue property was paid off with money furnished by Clarke, this allegation not being a part of the petition at the time the answer was filed), but denied the conclusions of law contained therein, and alleged that the property levied on was subject to the execution against Lamback and his sureties. By amendment to their answer it was alleged: "That all of the property described in the petition was purchased with funds of the County of Richmond, which had been wrongfully taken from said County of Richmond, and at the time the plaintiff in the case paid the County of Richmond, the amount due said county under their [its?] contract as sureties [surety?] on the bond of Walter E. Clarke, county treasurer, all of said property was being held by Walter E. Clarke and Ruth M. Clarke as trustees for the said County of Richmond;" and further, that "The Highland Avenue property . . was never the property of Walter E. Clarke; was never in his name, and was purchased long before plaintiff became surety on the bond of Walter E. Clarke as treasurer of Richmond County." Richmond County filed its answer in which it admitted practically all of the material allegations of fact as contained in the petition, with the same exception noted above with reference to the answer of Clarke et al., and further alleged that the execution issued in its favor on August 23, 1929, against Lon Fleming as administrator of the estate of Lamback, principal, and Woodward et al, as sureties, constituted a first lien on all of said described property levied on by virtue of said execution; that the legal title to the house and lot on Highland Avenue was never in Clarke, but was the sole property of Woodward et al., when the levy was made thereon; and that all of said

property set forth and described in the petition, the title to which was in Walter E. Clarke, was purchased by Clarke with money stolen from Richmond County.

The case was submitted to the judge, without the intervention of a jury, on the law and an agreed statement of facts which contained, among other things, the stipulation that all of the property embraced in the deed from Walter E. Clarke and Ruth M. Clarke to H. A. Woodward et al. "was, as appeared after Clarke's defalcations, paid for with moneys stolen from Richmond County by Walter E. Clark." The judge entered a decree awarding the fund realized from a sale of the properties to Richmond County. On exceptions taken by the surety company to this decree the judgment thus entered was reversed by the Supreme Court. 174 *Ga.* 599 (163 S. E. 482). Thereafter the county, over objection of the plaintiff, amended its petition, and sought to trace the stolen funds into the properties involved in the litigation. The case was submitted to a jury, and a verdict for the defendants was returned. The judge thereupon entered a decree awarding the funds to Richmond County. On writ of error prosecuted by the surety company, the judgment allowing the amendment to the answer of Richmond County, by which it was sought to trace the funds, was reversed by the Supreme Court, and all further proceedings declared nugatory. 182 *Ga.* 755 (187 S. E. 420). Thereafter Mrs. Clarke offered an amendment to her answer. The amendment set forth that the money used in the purchase of the Highland Avenue property and the money used to pay the security deed of $5000 were her own personal funds; that therefore the property was her property, and passed by her conveyance to the personal sureties on Lamback's bond, to be applied as provided in that deed. Richmond County then offered an amendment to its answer, and alleged in substance that all of the property, with the exception of the Highland Avenue property, was purchased with funds stolen by Clarke from the county; that when it discovered that the properties referred to in plaintiff's petition (other than the Highland Avenue property) had been purchased with moneys stolen from Richmond County it abandoned any claim, benefit, or right to said property by virtue of the deed from Clarke and his wife, and did not continue to defend against the petition or to prosecute any claim for funds derived from the sale of said property on the ground of any title derived

by virtue of said conveyance of April 1, 1929; that on the contrary, immediately upon the county discovering that the property (other than the Highland Avenue property) had been purchased with moneys stolen from Richmond County by Clarke, it sought in equity to trace its funds into said property; that the Highland Avenue property was the sole property of Mrs. Clarke, and therefore was never impressed with any statutory lien in favor of the county; that "up to the time of Ruth M. Clarke's filing her last amendment it was led into believing that this Highland Avenue property was purchased and improved with funds misappropriated by Walter E. Clarke from Richmond County, and its election heretofore made to trace misappropriated funds into this property was made on account of the then-existing claim by her in reference thereto; that it is now advised and charges that the Highland Avenue property was not purchased with funds misappropriated from the county, nor was the money for the improvements on said property supplied by Walter E. Clarke, and Richmond County now says, if true, that it is entitled to the benefit of the funds derived from the sale of the Highland Avenue property through Ruth M. Clarke, and not because said property was purchased with funds misappropriated from the county;" and that it did not desire to further proceed with the trial of the case upon the agreed statement of facts theretofore made, but desired to repudiate and withdraw from the same.

Woodward et al. offered an amendment to their answer, which was in substance the same as that of the county above set out. The judge entered an order overruling the objections and demurrers of the surety company to the above amendments, and entered a preliminary decree holding that Richmond County by its election had precluded itself from tracing the stolen funds into any of the properties; that Mrs. Ruth M. Clarke was bound by the judgments of this court and of the Supreme Court, finding that the Highland Avenue property was purchased with stolen funds, and that she could not now assert differently; that the surety company, having succeeded only to the rights of Richmond County by virtue of the executions issued against Walter E. Clarke for his defalcations while treasurer, was entitled to the proceeds realized from all the properties except the Highland Avenue property; that the Highland Avenue property having been purchased by Clarke with money which he had stolen while acting as clerk for Lamback, treasurer,

for which the personal sureties were liable, the personal sureties were entitled to the proceeds of Highland Avenue property; that the parties might withdraw from the agreed statement of facts all facts except those established by the former judgments of the trial court and of the Supreme Court; and defined the issues remaining in the case for determination on final hearing as being: "(a) The amount of the defalcations of . . Clarke while treasurer for which United States Fidelity & Guaranty Company is liable; the amount paid by United States Fidelity & Guaranty Company to Richmond County for such defaults, and the amount to which United States Fidelity & Guaranty Company is entitled from the proceeds, less their pro-rata share of administrative costs, realized from the properties purchased by . . Clarke with money stolen from Richmond County while treasurer. (b) The amount to which Richmond County is entitled against the estate of . . Lamback and his personal sureties for defalcations by . . Clarke while acting clerk to . . Lamback during the latter's terms as treasurer. (c) The amount of the proceeds, less their pro-rata share of the administrative costs, realized from the Highland Avenue property; with which the personal sureties should be credited on the claim above referred to of Richmond County against them."

For the purpose of the next trial of the case, all of the parties entered into another statement of facts in which, among other things, it was agreed that all the properties excluding the Highland Avenue property realized the net sum of $9491.73; that the Highland Avenue property realized the net sum of $9647.65; that the administrative costs which had been paid were $1637.20; that, pursuant to order of the court, the sum of $2713.29 was paid to attorneys for Richmond County, to be credited on the execution in favor of Richmond County against the estate of Lamback and the personal sureties on his bond; and that the surety company had expended $294.99 as costs in carrying this case to the Supreme Court on two occasions. Based on this agreed statement of facts, and in accordance with the terms of the preliminary decree, the substance of which has heretofore been set out, the judge, by agreement without the intervention of a jury, entered a final decree. In this decree it was held that the amount of money derived from the sale of all of the property, excluding the Highland Avenue property, less fees paid to attorneys for the county, and all of the adminis-

trative costs, be paid to the surety company; that the amount derived from the sale of the Highland Avenue property be credited on the execution in favor of Richmond County against Lamback and his personal sureties. The case is before this court upon three separate bills of exceptions: The United States Fidelity & Guaranty Company, plaintiff in error, *v.* Clarke, Richmond County, et al., defendants in error, in case number 12590; Mrs. Clarke and the personal sureties on the bond of Lamback and others, as plaintiffs in error *v.* United States Fidelity & Guaranty Company, Richmond County, and Lon Fleming as administrator of the estate of Lamback, defendants in error, in case number 12592; Richmond County, plaintiff in error *v.* United States Fidelity & Guaranty Company, Clarke, et al., defendants in error, in case No. 12591. Inasmuch as each bill of exceptions deals with the same facts, and each is somewhat dependent upon the others, we deem it desirable to dispose of all of them in one opinion.

■ The first question to be disposed of is whether the judge erred in allowing the amendments. In this State the right of either party to amend pleadings is very broad, and the practice of allowing them very liberal. *Jenkins* v. *Lane,* 154 *Ga.* 454 (115 S. E. 126). "All parties, whether plaintiffs or defendants, in the superior or other courts, whether at law or in equity, may at any stage of the cause, as matter of right, amend their pleadings in all respects, whether in matter of form or of substance, provided there is enough in the pleadings to amend by." Code, § 81-1301. A defendant may, after the first term, by amendment, change, alter, or modify his original answer *(Phelps* v. *Daniel,* 86 *Ga.* 363 (3), 12 S. E. 584; *Georgia Railroad & Banking Co.* v. *Gardner,* 113 *Ga.* 897 (2), 39 S. E. 299; *Massengale* v. *Pounds,* 108 *Ga.* 762, 33 S. E. 72; *Alabama Midland Ry. Co.* v. *Guilford,* 114 *Ga.* 627, 40 S. E. 794; *Wynn* v. *Wynn,* 109 *Ga.* 255, 34 S. E. 341), and in addition set up new, distinct, and even contradictory defenses of which notice was not given in the original answer *(Mendel* v. *Miller,* 134 *Ga.* 610 (2), 68 S. E. 430; *Connor* v. *Hodges,* 7 *Ga. App.* 153 (6), 66 S. E. 546; *Club Aluminum Co.* v. *Woodard,* 43 *Ga. App.* 307, 158 S. E. 616; *Stanton* v. *Burge,* 34 *Ga.* 435; *Cahn* v. *Newhouse,* 60 *Ga.* 50; *Kreischer* v. *Bank of Louisville,* 32 *Ga. App.* 699, 124 S. E. 539; *Hagerstown Steam Engine Co.* v. *Grizzard,* 86 *Ga.* 574 (2), 12 S. E. 939; *Estill* v. *Estill,* 147 *Ga.* 358, 94 S. E. 304);

and it is no objection to such an amendment that the defendant knew of the new matters set up at the time of the original answer, provided the defendant attaches an affidavit "that at the time of filing the original plea or answer he did not omit the new facts or defense set out in the amended plea or answer for the purpose of delay, and that the amendment is not offered for delay," as provided in the Code, § 81-1310. See *Ford* v. *Williams,* 98 *Ga.* 238 (25 S. E. 416); *Snyder* v. *Webb,* 101 *Ga.* 793 (28 S. E. 976); *Ferguson* v. *Ferguson,* 51 *Ga.* 340 (4). When the original decree of the judge of the superior court awarding the fund in controversy to Richmond County was reversed by this court with no special directions (174 *Ga.* 599, supra), and the judgment of this court was made the judgment of the court below, the former judgment was thereby vacated, and the case stood for trial de novo as in the first instance. *Walker* v. *Dougherty,* 14 *Ga.* 653; *Woods* v. *Jones,* 56 *Ga.* 520; *Schley* v. *Schofield & Son,* 61 *Ga.* 528; *Anderson* v. *Clark,* 70 *Ga.* 362 (2); *Lyon* v. *Lyon,* 103 *Ga.* 747 (30 S. E. 575); *Laramore* v. *Jones,* 157 *Ga.* 366 (121 S. E. 411); *Latimer* v. *Setzer,* 41 *Ga. App.* 455 (153 S. E. 443); *Scott* v. *Powell Paving Co.,* 43 *Ga. App.* 705 (159 S. E. 895); *Mayor &c. of Monroe* v. *Fidelity & Deposit Co.,* 50 *Ga. App.* 865 (178 S. E. 767); *Griffin* v. *Barrett,* 185 *Ga.* 443 (195 S. E. 746). The effect of the subsequent reversal by this court of the judgment allowing certain amendments by Richmond County (182 *Ga.* 755) was to set aside the proceedings occurring after the amendment, and to place the case where it stood prior to the amendment. *Burch* v. *Swift,* 116 *Ga.* 595 (3) (43 S. E. 64). Upon the return of the remittitur of this court reversing the judgment of the judge, the case still stood upon the docket for a new trial under the previous judgment of the court. Code, §§ 70-401 et seq. The pleadings, "while the case stands upon the docket for trial after the grant of a new trial," are "subject to amendment as in other cases." *Mayor &c. of Monroe* v. *Fidelity & Deposit Co.,* supra. Attached to the amendments filed by the defendants and now being considered was an affidavit in conformity with the Code, § 81-1310.

■ The surety company takes the position that since the original decree in the case, awarding the fund to Richmond County, found as a fact that all of the property, including the Highland Avenue property, was purchased by Clarke with funds stolen from

the county, and since no exception was taken to this finding by any of the defendants (Clarke, his wife, Richmond County, or the personal sureties), and that since the Supreme Court reversed the judgment only on points of law, they were estopped by such finding unexcepted to, and were concluded by the decision of this court from setting up by amendment that the Highland Avenue property was legally and equitably the property of Mrs. Clarke. This position can not be successfully maintained, because, as we have seen, the legal effect of this court's previous decision reversing the original decree was to set it aside in toto and to grant a new trial.

■ Nor were the amendments objectionable, as contended by surety company, because the parties were bound by the agreed statement of facts entered into between them at the first trial, which recited in part that "all of the property embraced in the deed from Walter E. Clarke and Ruth M. Clarke to H. A. Woodward" et al. "was, as appeared after Clarke's defalcations, paid for with moneys stolen from Richmond County by Walter E. Clarke." An agreed statement of facts entered into between the parties to an action, for the purpose of dispensing with proof on some or all of the issues presented by the pleadings, constitutes a solemn admission in judicio; and so long as it remains in the case, it is conclusive, so as to preclude either party from introducing evidence to disprove or contradict it. Code, § 38-114; *Southern Ry. Co.* v. *Hodgson Co.,* 148 *Ga.* 851 (98 S. E. 541) ; *Traylor* v. *Gormley,* 177 *Ga.* 185 (4) (169 S. E. 860) ; *Luther* v. *Clay,* 100 *Ga.* 236 (28 S. E. 46, 39 L. R. A. 95) ; 5 Wigmore on Evidence, 604, 605. While it is held that neither party can withdraw from or revoke such an agreed statement of facts, so as to permit the introduction of evidence to disprove or contradict it, after the trial in which it was made has commenced *(Hargroves* v. *Redd,* 43 *Ga.* 142), and while in some jurisdictions it has been held that neither party may withdraw from or revoke such an agreed statement of facts on a new trial of the case, except by permission of the judge in the exercise of a sound discretion (Holley *v.* Young, 68 Me. 215, 28 Am. R. 40; Woodcock *v.* Calais, 68 Me. 244; Elwood *v.* Lannon, 27 Md. 200; Owen *v.* Cawley, 36 N. Y. 600; Clason *v.* Baldwin, 152 N. Y. 204, 46 N. E. 322; Volker-Scowcroft Lumber Co. *v.* Vance, 36 Utah, 348, 103 Pac. 970, 24 L. R. A. (N. S.) 321, Ann. Cas. 1912A, 124; Keller *v.* Norfolk &c. R. Co., 113 W. Va. 286, 167 S. E. 448; Brown

*v.* Pechman, 55 S. C. 555, 33 S. E. 732), and in other juris-dictions only on grounds that would permit the rescission of an ordinary contract between the parties (Ex parte Hayes, 92 Ala. 120, 9 So. 156; LeBarron *v.* Harvard, 129 Neb. 460, 262 N. W. 26), yet it seems to be settled in this State, that, as to a new trial of the case, either party may, as a matter of right, withdraw from and repudiate such an agreed statement of facts, by giving proper and timely notice of such intended action to the opposite party, and provided the other party has not been injured thereby. See *Wallace* v. *Matthews, 39 Ga.* 617 (99 Am. D. 472); *Southwestern R. Co.* v. *Atlantic & Gulf R. Co., 53 Ga.* 401 (5); *Daniel* v. *Foster, 49 Ga.* 303; *Wilson* v. *Bank of Louisiana, 55 Ga.* 98 (2); *King* v. *Shepard, 105 Ga.* 473 (30 S. E. 634); *Johnson* v. *Wright, 19 Ga.* 509; *Harris* v. *McArthur, 90 Ga.* 216 (2) 15 S. E. 758); *Commer-cial Union Assurance Co.* v. *Chattahoochee Lumber Co., 130 Ga.* 191 (2, 3) (60 S. E. 554); *Norris* v. *Milner, 20 Ga.* 563. Cf. *Mims* v. *Jones, 135 Ga.* 541, 544 (69 S. E. 824); *Bunn* v. *Atlantic Coast Line R. Co., 18 Ga. App.* 66 (2) (89 S. E. 798); *Gaither* v. *Gaither, 23 Ga.* 521; *Cain* v. *Busby, 30 Ga.* 714, 722. In such case the agreement is nevertheless admissible in evidence against the party making it, in favor of the opposite party. It is not, however, "ab-solutely binding and conclusive upon the party by whom it was signed; but it is his right to disprove, rebut, or explain any statement therein contained." *King* v. *Shepard,* supra. When so introduced it is subject to all rules applicable generally to admissions. In the present case it appears that the amendments themselves, which were filed a year before the entering of a final decree, gave notice of their withdrawal and repudiation of the agreed statement of facts. It is not alleged, nor does it affirmatively appear, that the surety com-pany has suffered any injury by reason of the repudiation of the agreed statement of facts, and we are of the opinion that it pre-sented no obstacle, under the facts of the present case, to the allow-ance of the amendments setting up that the Highland Avenue prop-erty was in fact purchased by Mrs. Clarke with her own personal funds.

None of these rulings are inconsistent with the decision of this court on the second appearance of the case (182 *Ga.* 755, supra). The ruling made on that appearance of the case, to the effect that since the county had elected to treat the property as that of Clarke,

it could not set up an inconsistent state of facts and thereby claim the inconsistent remedy of tracing trust funds, does not have the effect of prohibiting the county, when the previously agreed statement of facts had been withdrawn, from thereafter by amendment setting up an inconsistent state of facts, to wit, .that the property belonged to Mrs. Clarke, where no remedy inconsistent with that first pursued is claimed. The amendment offered by the county and allowed by the judge did not involve an election between inconsistent remedies.

■ It is further urged that the former decisions of this court were res judicata on the allowance of the amendments, in so far as they set up the contention that the Highland Avenue property was actually the property of Mrs. Clarke. Neither of the former decisions of this court attempted to or did actually adjudicate, as a matter of law, that the equitable title to the Highland Avenue property vested in Clarke even though it was purchased with funds actually belonging to Mrs. Clarke, or that the surety company was entitled to the proceeds of this property, though the title stood in the name of Mrs. Clarke and was purchased with her funds; but on the other hand the decisions were rendered *under the admissions made in the pleadings and the agreed statement of facts* that all of the property, including the Highland Avenue property, was purchased with funds stolen by Clarke from Richmond County.

■ Although it appears from the record that the judge properly allowed the amendments of all of the defendants setting up that the Highland Avenue property was purchased by Mrs. Clarke with her own personal funds, yet in this same order he seems to have considered that it was established by the prior judgments in the case that this property was purchased with funds stolen from the county; for he ruled (and we use in substance the language of his order) that since the surety company, in paying off the executions issued by the county against Clarke, became entitled to recover only the net proceeds realized from the sale of the properties purchased by Clarke with funds stolen from Richmond County during his term as treasurer and while it was surety on his official bonds, this excludes it from participating in the net proceeds realized from the sale of the Highland Avenue property, "because purchased with funds stolen by . . Clarke, while acting as clerk for George F. Lamback;" that Richmond County being estopped to trace stolen

funds into any of the property, and Mrs. Clarke being concluded on the issue as to whether funds of Richmond County were used by Clarke in the purchase of the Highland Avenue property, they can not claim the proceeds from its sale. The personal sureties on the official bond of Lamback as treasurer are entitled to receive credit for the net proceeds realized from the sale of the Highland Avenue property by virtue of the deed to them from Walter E. Clarke and his wife, and in this same order he restricted the issues to be determined thereafter upon final hearing, as has already been noted in our statement of facts. Under the terms of these restrictions put upon the issues, the very question of the actual ownership of the Highland Avenue property, as raised by the amendments, was eliminated and held to have been already adjudicated contrary thereto.

While some evidence appears in the record as to the ownership of this property, the terms of the decrees, both preliminary and final, exclude it from consideration. The preliminary decree, as followed by the final decree, gave the case an entirely erroneous direction, in view of the amendments which were properly allowed and the law of the case as made by the two former decisions of this court, and was erroneous as to all parties. Under the law of this case, the statutory lien of the county against the property of the defaulting treasurer Clarke, now asserted by the surety company as transferee, attached to all of the property involved in the controversy, in preference to the rights of the personal sureties on the official bond of Lamback under the security deed executed in their favor by Clarke and his wife, and Richmond County, *in so far as it may be admitted or established by evidence* that such property was purchased by Clarke with money stolen from the county both while clerk for Lamback and while official treasurer. This for the reason that, since the county is precluded from tracing trust funds, any property purchased by Clarke with funds stolen from the county became his property, and subject to the statutory lien of the county, which is now being asserted by the surety company as transferee. Thus, had it on this trial been found as a fact that the Highland Avenue property was purchased with funds stolen from the county, a decree awarding the entire fund to the surety company should have been entered. However, the issue presented by the amendments should not have been eliminated from the case, as was done by the

preliminary decree allowing them, of which complaint is made by the personal sureties on the bond of Lamback and Richmond County. The amendments being properly allowed, a new issue was thereby introduced as to the Highland Avenue property, which should have been tried and adjudicated, and the former decisions of this court should be controlling as to the Highland Avenue property only in so far as the evidence introduced at the trial is the same as that produced at the former trial. See *Bass Dry Goods Co.* v. *Granite City Co.,* 116 *Ga.* 176 (3) (42 S. E. 415) ; *Central R. &c. Co.* v. *Smith,* 80 *Ga.* 526 (5 S. E. 772) ; *Allen* v. *Schweigert,* 113 *Ga.* 69 (38 S. E. 397) ; *Studdard* v. *Hawkins,* 139 *Ga.* 743 (78 S. E. 116) ; *Clarke* v. *Havard,* 115 *Ga.* 882 (42 S. E. 264) ; *Byrd* v. *Prudential Ins. Co.,* 185 *Ga.* 310 (195 S. E. 403) ; *Austin* v. *Central of Ga. Ry. Co.,* 3 *Ga. App.* 775 (61 S. E. 998) ; *Georgia Power Co.* v. *Moody,* 58 *Ga. App.* 252 (198 S. E. 342).

■ It is contended, however, by the surety company that this court can not consider whether the preliminary decree was erroneous as to Richmond County, as we have done in the preceding division of this opinion, for the reason that the exceptions pendente lite assigning error in this decree and filed by Richmond County, which, among others, raise the question thus considered, and upon which error is assigned by Richmond County, were not specified in its bill of exceptions as part of the record to be sent up. Although these exceptions may have been certified and transmitted by the clerk of the trial court not at the instance of the county which had taken and preserved them, since they appear to constitute a necessary and proper portion of the record, and their certification and transmission could have been required by this court of its own motion, they have been received and dealt with as a proper and material portion of the record. Code, § 6-810 (4). See *Hollingsworth* v. *Peoples Bank,* 179 *Ga.* 704, 709 (177 S. E. 743).

■ Another question raised in the exceptions pendente lite of Richmond County is that the court erred in overruling a motion filed by the county to strike certain paragraphs of an amendment to the answer of the personal sureties on the Lamback bond. The first paragraph thus attacked is as follows: "That the bond given by George W. Lamback and his personal sureties was not a statutory bond, and did not create the statutory lien provided for statutory bonds of county treasurers." The motion to strike asserted

that "the same is a conclusion of the pleader, and an erroneous one in view of said defendants' own pleadings; it affirmatively appearing that said bond is a statutory bond." The second paragraph is: "That by resolution dated August 15, 1930, the Board of Commissioners of Roads and Revenues of .Richmond County subrogated these defendants to the county's right of the first $14,788.89 collected out of the property conveyed to said sureties by Walter E. Clarke and Ruth M. Clarke; and this assignment and subrogation is superior to any assignment or subrogation from Richmond County to the United States Fidelity and Guaranty Company." The motion to strike assailed this paragraph as an erroneous conclusion from the defendants' pleadings, in that they admit that they have paid none of said sum, and that all said sums paid on said execution have been paid by the receiver in the case.

We think this motion should have been sustained, and the quoted paragraphs of the amendment stricken. It appears from the record that the bond referred to was a good statutory bond, and that nothing has ever been paid thereon by the personal sureties; and therefore no right of subrogation existed as to them.

■ Another question raised by Richmond County in its exceptions pendente lite is that the court erred, in its order of June 22, 1937, in failing to adjudge as one of the issues in said case whether or not the purported cancellaton of Richmond County's original execution against the administrator of Lamback and his sureties was void. In view of the recognition by the personal sureties of their continued liability under the bond on which this execution was based, as evidenced by their amendment filed June 22, 1937 (which amendment is set out in the succeeding division of this opinion), and of the provision in the final decree of January 7, 1938, awarding the county judgment against these sureties for the full amount of the original execution as prayed for by the county in its amendment of July 14, 1937, the failure of the court to make an express ruling as to the validity of the purported cancellation entered on the first execution .against the administrator of Lamback and his sureties was not substantial error. Under the pleadings, there was no controversy between the county and the sureties on this question; and the final judgment, by necessary implication, gave to the county the equivalent of the relief which it was seeking in regard to such cancellation. This is shown by the fact that in

accordance with the prayer of the county as contained in its amendment filed on July 14, 1937, it was decreed that the county recover against the administrator and the personal sureties $14,788.89, with interest from December 22, 1930, "and that execution issue therefor, and that said sureties on said Lamback's bond hold Richmond County harmless in this litigation."

■ Under grounds 1, 2, 3, and 5 of the motion for new trial of Richmond County it is insisted that the court erred in rendering judgment for any amount against the county, for the reasons that the part of the order of the court of December 22, 1930, awarding to the county the funds realized from the sale of the property conveyed to the personal sureties on the Lamback bond by Clarke and his wife, which provided that "said sureties enter into an obligation with . . receiver in this case, to repay the said receiver the sum of $14,788.89 . . in the event the decision in this case is reversed, . . it being the purpose of this order that this obligation shall stand in the place of the funds now in the hands of the receiver," has never been reversed by the Supreme Court, and that the provision that this obligation of the sureties should stand in the place of the money paid to Richmond County "has never been excepted to, and is final and conclusive upon all parties thereto." It appears from the record that after the rendition of the order just quoted the sureties for Lamback did enter into an obligation with the receiver, in accordance with the terms and conditions of such order, and that upon the execution of such undertaking all of the funds in the hands of the receiver were delivered to Richmond County. In *United States Fidelity & Guaranty Co.* v. *Richmond County*, 174 *Ga.* 599 (supra), the plaintiff in error assigned error on the portion of the judgment of December 22, 1930, which has been quoted; but this court made no ruling on this assignment. In that case the judgment awarding the funds to Richmond County was reversed. Counsel for Richmond County seem to take the position that each provision of the judgment of December 22, 1930, not in terms reversed by this court is still binding. We do not concur in this view; but, as has been ruled in the second division of this opinion, "the legal effect of this court's previous decision reversing the original decree was to set it aside in toto and to grant a new trial."

On June 22, 1937, the personal sureties filed an amendment to

their answer, in which it was stated: "That the execution issued by ' Richmond County against . . Lamback and the personal sureties . . was satisfied and canceled with the express agreement and understanding on the part of the personal sureties . . that if upon final judgment Richmond County was called upon to pay the amount so paid under said execution to the United States Fidelity and Guaranty Company, that the said personal sureties would pay the amount and that Richmond County would not have to pay the principal amount so paid or the interest on said amount, . . nor would Richmond County have to pay the amount expended under said execution as attorneys' fees. The said personal sureties recognize their full liability under said agreement, and it is their purpose to save Richmond County harmless and fully and completely protect Richmond County under said agreement by making prompt payment under said agreement when finally called upon so to do by final judgment in this case." In an amendment filed by Richmond County on July 14, 1937, it was prayed that the county "recover judgment against said personal sureties . . for whatever sum, if any, that may be finally awarded against it in favor of the United States Fidelity and Guaranty Company in this suit, and/or said receiver." Paragraph 11 of the agreed statement of facts, on which the case now under review was tried, is as follows: "The said personal sureties . . agree to hold Richmond County harmless as against any judgment that may be rendered in this case against it, and to pay off the same when it becomes a final judgment; and judgment shall be rendered in favor of Richmond County against said sureties for such amount, if any, as may be finally awarded United States Fidelity & Guaranty Company against Richmond County."

From the foregoing quotations from the pleadings, and the agreed statement of facts to which the county was a party, the county virtually conceded that the surety company would be entitled to a judgment against it for whatever amount it had received as the proceeds of property on which the surety company held the assigned lien against the treasurer. Therefore the county is not in position to object to a judgment against it in favor of the surety company, merely because of the indemnity contract entered into between the Lamback sureties and the receiver and approved by the court as inducement for delivery to the county of funds in the hands of such

receiver. Furthermore, since the surety company did not consent to such arrangement but duly excepted thereto, it could not be required to look only to the Lamback sureties or the receiver for the recovery of funds on which it had a lien, but which were actually delivered to and retained by the county pending the outcome of the litigation. On the other hand it was entitled, in equity, to a judgment against the county for whatever amount was subject to its lien and which was so received and retained by the county. See, in this connection, *Charters* v. *Candler,* 94 *Ga.* 210 (21 S. E. 518); *Hartsfield Co.* v. *Ray,* 51 *Ga. App.* 106 (179 S. E. 732).

■ Grounds 4, 6, and 7 of the motion for new trial complain that the final judgment of the court failed to provide protection to Richmond County by the personal sureties on the Lamback bond in the event it should be finally determined that the United States Fidelity and Guaranty Company was entitled to recover a larger sum against the county than was provided for in the decree. This decree awarded to the surety company judgment against the county for $5141.24, and ordered that execution issue against the administrator of Lamback and the personal sureties for $14,788.89, the amount paid to Richmond County under the original decree of December 22, 1930, with interest from that date, and "that said sureties on said Lamback's bond hold Richmond County harmless in this litigation," and authorized Richmond County to retain as a credit on its execution against Lamback and the personal sureties $9647.65. Richmond County does not contend that it is not protected by the terms of the decree if the decree is sustained, but insists only that in the event of a reversal and subsequent finding in favor of the surety company against the county it will not be entitled to recourse against the personal sureties for a larger amount than the present decree stipulates,—that is, for $14,788.89 less a credit of $9647.65. In view of the statement contained in the amendment to the answer of the personal sureties, filed on June 22, 1937, referred to in the preceding division, that "if upon final judgment Richmond County was called upon to pay the amount so paid under said execution [against Lamback's administrator and sureties] to the United States Fidelity and Guaranty Company, that the said personal sureties would pay the amount, and that Richmond County would not have to pay the principal amount so paid or the interest on said amount, . . nor would Richmond

County have to pay the amount expended under said execution as attorneys' fees," and especially in view of the provision of the final decree (unexcepted to by the personal sureties) that such sureties "hold Richmond County harmless in this litigation," there is no merit in the contention of the county, as made in grounds 4, 6, and 7 of its motion for new trial, that the final decree of January 7, 1938, did not fully protect the rights of Richmond County as against such personal sureties in the event it should be finally held that the United States Fidelity and Guaranty Company is entitled to recover against the county a sum in excess of $5141.24, as awarded in this decree. It will be seen that the decree not only awarded a judgment in favor of the county against the personal sureties for $14,788.89, less a stated credit, but further ordered and adjudged "that said sureties on said Lamback's bond hold Richmond County harmless in this litigation." Under the pleadings and the undisputed facts in the record, this latter portion of the decree adjudicated that in addition to the specific terms of the decree as then stated, such personal sureties shall hold the county harmless; and under such adjudication the court necessarily reserved the power, and would have the duty, of rendering further judgment in favor of the county and against the sureties, so as to save the county harmless, if upon another trial the surety company should recover against the county a larger sum than was decreed in favor of the surety company in the judgment under review. It follows that the grounds of the motion here referred to merely express an apprehension which is apparently not justified under the terms of the judgment, and that so far as these particular grounds are concerned the court did not err in overruling the motion for new trial. In order to relieve any possible uncertainty, however, direction is given that if upon another trial a larger sum should be awarded in favor of the surety company as against the county, such additional judgment be then rendered in favor of the county as against the sureties as will "hold Richmond County harmless in this litigation," whether for principal, interest, or attorneys' fees.

Under the rulings stated in divisions 5 and 7 above and in divisions 12 and 13, which follow, it is necessary that the case, upon this its third appearance in this court, must unfortunately go back for another trial. While the amendments which have been the subject of our rulings as to the Highland Avenue property introduced

a new and materially different issue as to which a new trial must be ordered, this is not true as to the remaining property involved in the case, and as to which we believe final direction should be given, so as to make the present disposition as nearly conclusive as possible, keeping in mind the duty to end, if we may, litigation so long continued. "The Supreme Court is authorized to make a final disposition of a case and to give it such direction as is consistent with· the law and justice applicable to it, and as will prevent the unnecessary protraction of litigation." *Robinson* v. *Wilkins,* 74 *Ga.* 47 (1 *b*) ; *Central Railroad & Banking Co.* v. *Kent,* 91 *Ga.* 687 (18 S. E. 850) ; *Comer* v. *Dufour,* 95 *Ga.* 376 (22 S. E. 543, 30 L. R. A. 300, 51 Am. St. R. 89) ; *Finley* v. *Southern Ry. Co.,* 5 *Ga. App.* 722 (64 S. E. 312), and cit. Accordingly, direction is given that upon the return of the remittitur to the superior court a final judgment be entered in favor of the surety company for the funds arising from the sale of the properties except the Highland Avenue property, subject to such administrative costs as may be properly taxed against it in view of what is herein held. Direction is further given that the new trial awarded as to the Highland Avenue property be confined solely to the determination of the new issue presented by the amendments, and no other. If it should be found that the Highland Avenue property was purchased with funds supplied by Clarke, the proceeds from the sale of this property should be awarded to the surety company. If it should be found that it was purchased with funds of Mrs. Clarke, its proceeds should be awarded to the county. In the event it should be found that both Mr. and Mrs. Clarke contributed to the purchase of the property the surety company should be awarded such portion of its proceeds as would represent Clarke's pro-rata contribution to its purchase, and the remainder, representing Mrs. Clarke's pro-rata contribution to its purchase, to the county, to be credited on its execution against the administrator of estate of Lamback and his sureties.. The plaintiff surety company's petition as several times amended, contains sufficient allegations, in the absence of special demurrer, to sustain an award of the entire proceeds of the Highland Avenue property, if the evidence should so warrant. The sufficiency of pleadings can not be raised by a motion for new trial; and the above ruling is made solely because of the fact that the court is exercising the power of giving direction in the case, and.

not by virtue of the assignment of error to this effect contained in the motion for new trial brought by Clarke et al.

■ Complaint is made by the surety company that the attorneys for Richmond County were awarded fees due to them as attorneys for the county under the execution issued against Lamback and his personal sureties, and that these fees were ordered paid out of the funds which the court found were payable to the surety company by virtue of the lien transferred to it by the county. Where administrative costs including attorneys' fees are allowable out of a fund, the fixing and taxing of them are wisely left to the discretion of the trial judge. Code, § 37-1105; *Postell* v. *Chapman,* 80 *Ga.* 679 (7 S. E. 119); *Lavender* v. *Shackelford,* 152 *Ga.* 363 (110 S. E. 1); *McDonald* v. *Dabney,* 161 *Ga.* 711 (132 S. E. 547); *Bush* v. *Little,* 171 *Ga.* 206 (154 S. E. 886); *Farnsworth* v. *McPherson,* 147 *Ga.* 384 (94 S. E. 220); *Porter* v. *Stewart,* 163 *Ga.* 655 (137 S. E. 28). However, in this case the claim of the county to compensation for its attorneys was by virtue of the execution against Lamback's administrator and sureties. The surety company had discharged its liability to the county, and held the county's execution against Clarke; and the fund out of which the county's claim was ordered paid arose from the sale of Clarke's property held subject to the execution under which the surety company was proceeding, and expressly held not subject to the execution against Lamback and his sureties. So we think this portion of the decree was erroneous, and hold that these attorneys' fees should not be taxed against any of the fund awarded to the surety company.

■ Complaint is made that the administrative costs of the receivership should be taxed pro rata against the proceeds of the Highland Avenue property and the other property separately awarded, instead of, as was done by the decree, solely against the funds already awarded the plaintiff surety company. While, if on the further trial ordered as to the ownership of the Highland Avenue property, it also, under the issue raised, should be awarded to plaintiff, a decision on this question would be unnecessary, nevertheless, in view of the present payment to be made to the plaintiff and with a hope of disposing of all questions that may arise on the next trial, we think it not amiss to deal with it now. Under the decree now made, the proceeds of the Highland Avenue property, constituting about half of the amount of the entire fund, have been

made to bear no part of the costs of administration. It seems to us an abuse of discretion to wholly exempt it, no matter to whom it is finally awarded, from some part of this expense, at least the costs of its own preservation and its disposition, such as commission on its sale, insurance charges, etc., if there were any. We do not hold, however, that the costs should be taxed pro rata. The trial judge is in better position to know the nature of the property with reference to the burdens of administration and other questions to be considered. Our statutes, as well as good judicial practice, have vested him with this power and charged him with this duty. See cases cited in the preceding division of this opinion.

*Judgments reversed, with direction. All the Justices concur, except*

ATKINSON, Presiding Justice, who dissents from the ruling in headnotes 2, 3, 5, 11, and the related divisions of the opinion, in so far as they adversely affect the United States Fidelity and Guaranty Company in relation to the Highland Avenue property; because those rulings are opposed to the principles as to election of rights and related questions as to election of remedies, as discussed in *Board of Education of Glynn County* v. *Day*, 128 *Ga.* 156 (5, 6), 162-168 (57 S. E. 359).